UNITED STATES of America,
Plaintiff–Appellee,

v.

Johnnie B. DAVIS, a/k/a Arthur Jerome Davis, Defendant–Appellant.

No. 92–3393.

United States Court of Appeals,
Tenth Circuit.

July 21, 1993.

Joseph D. Johnson (Erika V. Bessey, with him on the brief), Law Offices of Joseph D. Johnson, Chartered, Topeka, KS, for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), Wichita, KS, for plaintiff-appellee.

Before EBEL, RONEY[†] and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant Johnnie Davis was convicted on one count of conspiracy to distribute heroin, 21 U.S.C. § 846, six counts of distribution of heroin, 21 U.S.C. § 841(a)(1), and one count of use of a firearm in connection with the conspiracy offense, 18 U.S.C. § 924(c)(1). Mr. Davis received a sentence of 360 months and a fine of $554,620. He appeals his conviction and sentence on various grounds. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

### Background

Defendant and Wendell Nicholson were named in a nine-count narcotics indictment on March 28, 1991. The court later severed

---

[†] The Honorable Paul M. Roney, Senior United States Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Mr. Davis' trial from Mr. Nicholson's. A superceding indictment was filed that summer. A trial in the fall of 1991 ended in a mistrial. A retrial in the spring of 1992 resulted in a conviction on all counts. The government argued that Mr. Davis distributed heroin to several dealers in Wichita, Kansas, among them Mr. Nicholson. The government based its case largely on recorded conversations between Mr. Davis and an informer, testimony regarding Mr. Nicholson's sales practices, and oral statements made by Mr. Davis immediately following his arrest.

## Discussion

### I. Voluntariness Of Taped Informer Conversations

 Mr. Davis claims that the government coerced the consent of an informant to record telephone conversations with Mr. Davis. Although statute forbids the use of warrantless intercepted telephone conversations in law enforcement investigations, law enforcement personnel may lawfully monitor or record conversations with the consent of one of the parties to the conversation. 18 U.S.C. § 2511(2)(c); *United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir.1979). We review a district court's determination that consent was voluntary under the clearly erroneous standard. *United States v. Rodriguez–Garcia*, 983 F.2d 1563, 1567 (10th Cir. 1993). At both the trial and at the suppression hearing, the informant testified that he gave his consent to the recordings knowingly and freely. The district court's decision to admit the recordings was not clearly erroneous.

### II. Juror Bias

Mr. Davis seeks review of the trial court's denial of his motion for a new trial. He claims that a jury statement to the judge during deliberations demonstrates impermissible racial bias. The jury asked that Mr. Davis' family be excluded from the courtroom while taped conversations were replayed during deliberations. Among the fundamental rights secured by the Constitution is a criminal defendant's right to a jury that bases its verdict not upon ethnic bias, but upon the facts of a particular case. *See*

*Holland v. Illinois*, 493 U.S. 474, 479–80, 110 S.Ct. 803, 806, 107 L.Ed.2d 905 (1990). We review the trial court's denial of a motion for a new trial for an abuse of discretion. *United States v. Chatman*, 994 F.2d 1510 (10th Cir.1993).

 Defendant cites several cases in support of his argument of racial bias. However, those cases differ from the present case in that they were supported by at least some evidence of juror bias. We presume that jurors remain true to their oath and observe the instructions of the court absent evidence to the contrary. *United States v. Armendariz*, 922 F.2d 602, 606 (10th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). In *United States v. Heller*, 785 F.2d 1524 (11th Cir.1986), the jury forewoman wrote a note to the judge during deliberations mentioning racial slurs by other jurors. *Id.* at 1525. Subsequent voir dire supported the charges of racial bias and a mistrial was declared. *Id.* at 1526–27. In *United States v. Caporale*, 806 F.2d 1487 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987), a jury note during deliberations alerted the judge to possible juror misconduct. *Id.* 806 F.2d at 1504–05. Voir dire and an evidentiary hearing supported the conclusion that there was no jury bias and that a mistrial was unwarranted. *Id.* Inquiry into such matters, within the limitations of Fed.R.Evid. 606(b) and local rules, is the appropriate method of developing such allegations. Here, the court conducted voir dire of the jury foreperson during deliberations at the request of the Defendant in connection with allegations of improper outside contact with a witness. Although defense counsel was fully aware of the jury's request at the time of this voir dire, he did not seek to inquire about possible racial bias, nor does the record indicate that Mr. Davis ever formally requested access to the jurors to ask them about possible bias.

Mr. Davis bases his allegation of racial bias on nothing more than a hunch. He states in very conclusory fashion that the jury was "obviously unable to come into their deliberations with an open mind" since they asked that the Defendant's family be excluded from the replaying of the taped conversations.

We do not believe that such a conclusion is "obvious" given these facts. Although Mr. Davis' family was black, the jury could have requested their absence from this particular proceeding for many legitimate reasons. In denying Defendant's motion for a mistrial, the district court judge noted that the gallery had disturbed the course of the trial and received an admonition from the trial judge, and that the tapes were difficult to hear. We fail to see any abuse of discretion absent some indication that misconduct has occurred. Clearly, an unsupported allegation of jury bias is insufficient to justify a new trial.

### III. Sufficiency Of The Evidence

■ Mr. Davis claims that the evidence presented to the jury was insufficient to support guilty verdicts on the conspiracy and weapons charges. In considering a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the government to determine whether the evidence is such that a reasonable jury could find the Defendant guilty beyond a reasonable doubt. *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). We consider both direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence. *Id.* We accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses. *United States v. Youngpeter*, 986 F.2d 349, 352 (10th Cir.1993).

■ Conspiracy prosecutions must demonstrate that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, that the defendant knowingly and voluntarily became a part of the conspiracy, and that the coconspirators were interdependent. *Fox*, 902 F.2d at 1514. Mr. Davis challenges the sufficiency of the government's evidence that he had a unity of purpose or a common design or understanding with coconspirators to distribute heroin. *See United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). A conspiracy conviction must be supported by evidence of the essen-

tial element of interdependence. *Fox*, 902 F.2d at 1514. Interdependence requires a showing that each conspirator depended on the actions of the other conspirators to achieve the common goal. *Id.* The agreement may be inferred from the facts and circumstances presented to the jury. *Kendall*, 766 F.2d at 1431.

■ Here, a narcotics detective testified that following his arrest, Mr. Davis confessed to distributing wholesale quantities of heroin to Mr. Nicholson on a regular basis. Aplee. App. at 564–66. In addition, a reasonable jury could have interpreted a tape recorded conversation between Mr. Davis and a police informant as demonstrating a division of labor between Mr. Davis and Mr. Nicholson. In that conversation, Mr. Davis referred the informant to Mr. Nicholson when Mr. Davis believed the informant wished to purchase a retail amount of heroin (a half gram), but then expressed interest in dealing directly with the informant when the informant indicated that he wanted to purchase a wholesale amount of heroin (a half ounce). Aplee. Br. at 15. When the police arrested Mr. Nicholson immediately after he left Mr. Davis' house, Mr. Nicholson carried numerous small baggies of heroin packaged for resale. Aplee. App. at 520–21. Overwhelming evidence indicated that both men were heroin dealers. A reasonable jury could have inferred an interdependent relationship and an agreement that Mr. Davis would distribute heroin to Mr. Nicholson, who would handle retail sales. A reasonable jury could also have concluded that Mr. Nicholson's possession of a loaded handgun in connection with his heroin sales was a foreseeable consequence of the agreement. *See Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946).

### IV. Right To A Speedy Trial

■ Mr. Davis also claims that the government violated his constitutional and statutory rights to a speedy trial. We review constitutional violations and the trial court's application of the legal standards of the Speedy Trial Act de novo, accepting the factual findings of the district court unless

clearly erroneous. *United States v. Saltzman*, 984 F.2d 1087, 1092 (10th Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993). One hundred fifty-nine days passed between Mr. Davis' arrest and the beginning of his first trial. However, much of that time was spent considering Mr. Davis' own pretrial motions, investigating allegations that Mr. Davis attempted to bribe a witness, and preparing a superceding indictment. In addition, Mr. Davis has failed to demonstrate any prejudice by the length of time between arrest and trial. We therefore reject Mr. Davis' argument that the delay was unreasonable and prejudicial. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). Mr. Davis also asserts his statutory right to a speedy trial. Although more than seventy days elapsed between indictment and trial, the delays due to the pretrial motions mentioned above and the delay resulting from the addition of the codefendant are properly excluded when calculating the seventy days. *See* 18 U.S.C. § 3161(h)(1)(F) & (h)(7). Excluding these periods of time, Mr. Davis' trial commenced within the allowable time under the Speedy Trial Act.

### V. Constitutionality Of Sentencing Guideline § 3E1.1

Finally, Mr. Davis claims that U.S.S.G. § 3E1.1 imposes a penalty upon him for exercising his constitutional right to a trial. Although § 3E1.1 permits a two level reduction for an acceptance of responsibility, we have previously rejected the argument that this reduction serves to penalize those who exercise their right to a trial. *United States v. Trujillo*, 906 F.2d 1456, 1461 (10th Cir.) *cert. denied*, 498 U.S. 962, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990).

AFFIRMED.