**UNITED STATES of America, Plaintiff,**

v.

**Gerald G. BURCH, Defendant.**

**No. 95–40045–01–SAC.**

United States District Court,
D. Kansas.

Feb. 21, 1997.

Joseph D. Johnson, Joseph D. Johnson, Chartered, Topeka, KS, Eric Kjorlie, Topeka, KS, Steven E. Emke, Grounds, Rose & Emke, Kansas City, MO, Sue Carpenter, Topeka, KS, Gordon A. Harness, Newcastle, OK, Gary Hill, El Paso, TX, for Gerald G. Burch.

Gerald G. Burch, Lancaster, TX, pro se.

Bruce W. Simon, Simon & Simon, Kansas City, MO, Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, Michelle Wallace, Kansas City, MO, for Gale F. Burch.

Gale F. Burch, Lancaster, TX, pro se.

Thomas G. Luedke, Office of the U.S. Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On June 13, 1995, the grand jury returned a two count indictment charging Gerald G. Burch and Gale F. Burch, husband and wife, with conspiracy to possess with intent to distribute 538 pounds of marijuana (Count 1) and possession with intent to distribute 538 pounds of marijuana (Count 2). The marijuana was discovered during a stop of the semi-tractor/trailer rig driven by Gerald Burch. Gale Burch was riding as a passenger.

On October 5, 1996, the court entered a memorandum and order, which, *inter alia,* denied the defendants' motions to suppress evidence of the June 4, 1995, search. *See United States v. Burch,* 906 F.Supp. 592 (D.Kan.1995). In their motions to suppress, the defendants argued that the 538 pounds of marijuana discovered in the trailer was the

product of an illegal search unsupported by probable cause. The court concluded that the evidence was the product of a lawful regulatory search and seizure. 906 F.Supp. at 598–99.

On March 29, 1996, the court entered an order severing Gerald Burch's trial from Gale Burch's trial.[1] On April 22, 1996, trial of Gale Burch commenced. The jury found Gale Burch guilty on both counts. *See United States v. Burch,* 928 F.Supp. 1066 (D.Kan. 1996) (denying Gale Burch's motion for judgment of acquittal, or, in the alternative, for a new trial).

On October 15, 1996, the court permitted Joe Johnson, retained counsel, to withdraw from his representation of Gerald Burch. Satisfied that Gerald Burch was without sufficient resources to retain another attorney, the court appointed Sue Carpenter. On December 13, 1996, the court granted Sue Carpenter's motion to withdraw and appointed Eric Kjorlie to represent Gerald Burch.

On January 10, 1997, Burch filed a "Supplement to Motion to Suppress Evidence [FRCP 12, 41(e), 41(f) ]" (Dk.194). That motion was denied. *See United States v. Burch,* No. 95–40045–01–SAC, 1997 WL 50302 (D.Kan. Jan.22, 1997). The case proceeded to trial.

Selection of the jury commenced on January 28, 1997. During its case, the government introduced evidence that Burch and his wife were hauling 538 pounds of marijuana from Texas to Chicago when stopped by Trooper Smith in Kansas. The marijuana had an estimated street value of over $1,000,-000. According the testimony of Trooper Smith and Trooper Haak, Burch confessed on three separate occasions that he was a knowing participant in the conspiracy to distribute marijuana. Burch admitted hauling

the marijuana for a person named "Ishmel" for the sum of $25,000, or approximately $50 a pound. The government rested its case after approximately one day of evidence. Burch's motion for judgment of acquittal at the close of the government's case was denied.

Burch presented a defense and testified on his own behalf. Burch claimed that he was an elite driver, primarily hauling freight for popular musical and broadway shows. Burch testified that he had hauled equipment for musical shows like Madonna and Clint Black. Burch testified that prior to being stopped in Kansas by Trooper Smith he did not know what was contained in the boxes which he was hauling. Instead, it was his understanding that he was hauling 500 pounds of "stereos" from Texas to Chicago for the sum of $337. Burch denied that he had confessed to either Trooper Smith or Haak, essentially calling both troopers liars. Burch also introduced evidence that he had declared bankruptcy on January 23, 1995, and that he had received a discharge from bankruptcy on May 12, 1995. Burch also admitted his tax returns from 1994 and various business records.[2] Other witnesses called by Burch discussed trucking practices and procedures as well as their personal relationships with Burch.

During cross-examination, over the defendant's objection, the court permitted the government to cross-examine the defendant concerning law enforcement officers' seizure of $60,000 from Burch and his wife in New York City at the time that they were released on bond pending trial in this case.[3] According to Burch, he and his wife had traveled to New York City with approximately $60,000 in cash to purchase a truck from a person whose name they did not know.[4] Upon their

---

1. Prior to trial, Gerald Burch terminated the employment of his first retained attorney. Gerald Burch's newly retained attorney, Joe Johnson indicated that he would not be able to prepare for trial, then set for April 22, 1996.

2. These documents were apparently introduced to demonstrate that Burch's income was derived from legitimate business sources.

3. Prior to trial, the government indicated that it did not intend to offer evidence of the $60,000

seizure in its case-in-chief, but indicated that it might seek to offer it to impeach or rebut the defendant's case. The government was instructed to not mention this evidence or seek to introduce it without first obtaining approval from the court.

4. This event served as the basis to revoke both Gerald and Gale Burch's pretrial release. *See United States v. Burch,* No. 95–40045–01–02–SAC, 1996 WL 172968 (D.Kan. March 19, 1996) (affirming magistrate judge's order revoking pre-

arrival to a certain motel in New York, the unknown seller would make contact with the Burches to possibly consummate the deal. The defendant's motion for judgment of acquittal at the close of his case was denied.

The government presented a brief rebuttal, recalling Trooper Smith to address certain comments made by Burch during his case.

On January 31, 1997, after deliberating for approximately three hours, the jury returned a verdict finding the defendant guilty of both charges.

This case comes before the court upon the defendant's "Motion for Judgment of Acquittal, or in the Alternative, for a New Trial" (Dk.212). Burch contends that there was insufficient evidence for the jury to have concluded that he was a knowing participant in a conspiracy to possess with the intent to distribute marijuana. As he did at trial, Burch contends that he did not know that he was transporting marijuana and that his only knowledge that the substances contained within the boxes that he was hauling was marijuana came from his discussions with the troopers *after* his truck was stopped. Burch denies any prior knowledge that he was hauling a controlled substance.

■ In support of his request for a new trial, Burch argues that the court erred in permitting the government to cross-examine him regarding the $60,000 seized in New York City. Burch contends that the evidence was prior bad act evidence that should have been excluded under Fed.R.Evid. 404(b). Burch contends that this evidence of "unexplained wealth" [5] prejudiced him and precluded the jury from rendering a fair verdict in this case.

The government opposes Burch's motion. The government contends that there was ample evidence from which a rational factfinder could have concluded that Burch was

guilty of the crimes charged. In regard to the defendant's contention that the court improperly admitted evidence regarding the $60,000 seized in New York, the government contends that the evidence was not admitted under Rule 404(b) but instead to impeach and rebut Burch's claim that his income was derived from legitimate sources. The government argues that Burch opened the door to such evidence by introducing evidence regarding his own financial status.

The court, having considered the briefs of counsel, the evidence presented at trial and the applicable law, denies Burch's motion.

### Sufficiency of the Evidence

To review the sufficiency of the evidence supporting a criminal conviction, the court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir.1993). In reviewing the sufficiency of the evidence, the court must consider both direct and circumstantial evidence, as well as reasonable inferences to be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993) (citing *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)).

"'A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such a finding is infirm because it is not based on the evidence.'" *United States v. Jones*, 49 F.3d 628, 633 (10th Cir.1995) (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir.1987) (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir.1982))).

The line between a reasonable inference that may permissibly be drawn by a jury

---

trial release). In its March 19, 1996, memorandum and order, the court describes Gerald Burch's story for going to New York as "incredible." "The court simply does not believe that the defendants would spend over $1,500 to travel to New York with $60,000 in cash under the circumstances that they have offered." *Id.* at *7.

5. "Evidence of unexplained wealth is probative and therefore admissible if it 'creates a reasonable inference of the defendant's involvement in the drug conspiracy or trafficking.'" *United States v. Penny*, 60 F.3d 1257 (7th Cir.1995) (quoting *United States v. Davis*, 789 F.Supp. 1130, 1132 (D.Kan.1992)), *cert. denied*, —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. *Jones,* 49 F.3d at 632 (quoting *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 895 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208, (1981)). "Additionally, 'the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'" *Jones,* 49 F.3d at 632 (quoting *Galloway v. United States,* 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943)).

The court must accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses. *Davis,* 1 F.3d at 1017 (citing *United States v. Youngpeter,* 986 F.2d 349, 352 (10th Cir.1993)).

### Analysis

 The direct and circumstantial evidence overwhelmingly supports the jury's verdict in this case. The defendant's contention that he was an unwitting participant in a criminal undertaking to distribute over 500 pounds of marijuana is belied by each of his three separate confessions to law enforcement officers. Although Burch testified at trial that he was not knowingly hauling the marijuana, his own confession that he was hauling the marijuana for the sum of $25,000 clearly demonstrates that he was a knowing participant in the conspiracy. Burch's confessions, coupled with the other evidence introduced at trial, are sufficient to sustain each of his convictions. The fact that the jury chose to believe the credible testimony of Troopers Smith and Haak and rejected Burch's own "version"[6] of the events of June

6. Burch's own version of the facts surrounding his pickup and intended delivery of the "stereos" was highly implausible and contained numerous internal inconsistencies. During closing argument, the government made the compelling argu-

4 and 5 of 1995 provides him no basis for relief.

### Standards for Motion for New Trial

 A court may grant the defendant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. Courts view motions for new trial with disfavor and grant them only with great caution. *United States v. Chatman,* 994 F.2d 1510, 1518 (10th Cir.), *cert. denied,* 510 U.S. 883, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993); *United States v. Leeseberg,* 767 F.Supp. 1091, 1093 (D.Kan.1991). The defendant has the burden of proving the necessity of a new trial. *United States v. Ailsworth,* 948 F.Supp. 1485, 1498 (D.Kan. 1996) (citing *United States v. Davis,* 15 F.3d 526, 531 (6th Cir.1994)). For purposes of this case, the relevant rule is that a new trial should be granted upon "[a]ny error of sufficient magnitude to require reversal on appeal." 3 Charles A. Wright, *Federal Practice and Procedure* § 556 (1982); *see United States v. Stiner,* 765 F.Supp. 663, 664 (D.Kan.1991), *aff'd,* 952 F.2d 1401 (10th Cir. 1992) (Table); *United States v. Suntar Roofing, Inc.,* 709 F.Supp. 1526, 1530 (D.Kan. 1989), *aff'd,* 897 F.2d 469 (10th Cir.1990). The decision of whether or not to grant a new trial is committed to the sound discretion of the district court. *See United States v. Patterson,* 41 F.3d 577, 579 (10th Cir.1994).

### Analysis

 Nothing argued by Burch demonstrates that he is entitled to a new trial. As the government suggests, the evidence regarding the seizure of $60,000 in New York City was not admitted under Rule 404(b), but was instead admitted as proper impeachment evidence under Fed.R.Evid. 611(b). Tenth Circuit precedent supports this analysis. In *United States v. Rackley,* 986 F.2d 1357, 1363 (10th Cir.), *cert. denied,* 510 U.S. 860, 114 S.Ct. 173, 126 L.Ed.2d 132 (1993), the defendant, a person convicted of bank fraud and misapplication of bank funds, argued that the government was wrongfully permitted to

ment that drug dealers would not have entrusted a million dollars worth of marijuana to a person with the limited knowledge of the manner in which the marijuana was to be delivered as Burch claimed he possessed.

question himself and a defense witness regarding civil actions brought against them by the Office of the Comptroller of the Currency (OCC). In a settlement of the administrative action brought by the OCC, the defendant and the defense witness had entered into a consent order imposing a lifetime ban on banking. Pursuant to the consent order, neither the defendant nor the defense witness could re-enter banking without the OCC's consent.

At trial, the defendant and the defense witness each testified that they had both complied with all of the proper banking customs, procedures and regulations and that they had exercised great care in making the loans. The government was permitted to cross-examine the defendant and the defense witness concerning the OCC ban.

▉ The Tenth Circuit found no error in permitting cross-examination of the defendant and the defense witness concerning the OCC ban:

> Given this line of direct testimony, the court finds that it was proper under Fed.R. Evid. 611(b) for the government to inquire as to the OCC ban on cross-examination for the purpose of attacking the credibility of the witnesses. Because both witnesses in their direct testimony testified regarding their care and expertise in following banking rules and regulations, the fact that as a result of an administrative investigation both had consented to a lifetime ban from banking is probative as to the credibility of the witnesses' testimony.

Defendant argues strenuously that the evidence regarding the OCC ban was not properly admitted under Fed.R.Evid. 404(b), and that no 404(b) limiting instruction was given (although he also candidly admits that none was requested). We find defendant's argument based on 404(b) standards to be incorrect because the government's cross-examination regarding the OCC ban was not 404(b) evidence. It went to the issue of the witnesses' credibility, and was properly admitted as impeach-

ment under Fed.R. Evid. 611(b). Rule 404(b) deals with the handling of evidence of other crimes, wrongs or acts, making such inadmissible to prove character in order to show conformity therewith but allowing such for certain other limited purposes. The government did not offer the evidence for any of the purposes covered by Rule 404, proper or improper, but rather to impeach credibility. When matters are brought out in cross-examination for impeachment purposes, the appropriate evidentiary rule is 611(b). *See United States v. Smalley,* 754 F.2d 944, 951 (11th Cir. 1985). Our review of the record indicates that the trial court properly admitted the evidence for that purpose.

986 F.2d at 1362–1363. Once Burch introduced evidence regarding his legitimate sources of income, the government was entitled to probe the veracity of that claim. Evidence that Burch and his wife had $60,000 in cash, close in time to his discharge in bankruptcy, and that he provided no plausible story to explain the money or its intended use was relevant to evaluating Burch's claim that he was a legitimate business man. Evidence regarding the seizure of the $60,000 in New York was clearly appropriate impeachment material.[7]

IT IS THEREFORE ORDERED that Gerald Burch's "Motion for Judgment of Acquittal, or in the Alternative, for a New Trial" (Dk. 212) is denied.

---

7. Even if permitting the government to cross-examine Burch regarding the $60,000 was error, that error was harmless. Based upon the overwhelming evidence of guilt, introduction of testimony regarding the $60,000 seizure had little, if any effect on the jury's verdict. *See United States v. Albers,* 93 F.3d 1469, 1481 (10th Cir.1996).