UNITED STATES of America,
Plaintiff,

v.

Jay Dee WALTERS, Cheryl
Walters, Defendant.

Nos. 99–40012–01–SAC,
99–40012–02–SAC.

United States District Court,
D. Kansas.

Jan. 12, 2000.

Anthony W. Mattivi, Office of U.S. Atty., Topeka, KS, for U.S.

Eric Kjorlie, Topeka, KS, pro se.

Dwight L. Miller, Topeka, KS, pro se.

Cheryl Walters, Valley Falls, KS, pro se.

Jay Dee Walters, Valley Falls, KS, pro se.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On May 27, 1999, the grand jury returned a five count superseding indictment charging the defendants, Jay Dee Walters and Cheryl Walters, with one count of conspiracy to manufacture and distribute in excess of one kilogram of a mixture or substance containing a detectable amount of methamphetamine (Count 1) and one count of harboring a federal fugitive, Billy J. Hill (Count 2). Count 3 of the indictment charges Cheryl Walters with money laundering. Count 4 charges Jay Dee Walters with money laundering. Prior to trial the court granted the government's motion to dismiss both money laundering counts. In Count 5, the United States seeks forfeiture of certain property allegedly used to commit and to facilitate the conspiracy to manufacture and distribute methamphetamine charged in Count 1. The Walters are husband and wife.

On August 4, 1999, this court entered a memorandum and order granting in part and denying in part the pretrial motions filed by the defendants. *See United States v. Walters,* 188 F.R.D. 591 (D.Kan.1999). In that decision, the court granted the defendants' request to bifurcate the guilt phase from the criminal forfeiture count. *Id.* at 598.

Trial in this matter commenced on December 1, 1999. During its case-in-chief, the government introduced redacted[1] copies of the tape-recorded post-indictment statements of each codefendant. At the time of the post-indictment interviews, both defendants were represented by Eric Kjorlie.[2] During separate interviews, each defendant essentially admitted to harboring Billy Hill from law enforcement officers on their farm and to obtaining precursor chemicals or other items used to manufacture methamphetamine, but stated that they did so only out of their imminent fear of reprisal in the form of physical torture and death from Hill or one of his cohorts. Each defendant claimed to have been so afraid for their own lives and the lives of their children that they wrote letters to a friend and to a family member in which they stated that they believed they were in severe danger from Billy Hill but

---

1. Each statement was redacted to remove irrelevant information, information the court deemed unfairly prejudicial or statements which posed *Bruton* problems.

2. Although Kjorlie continued to represent Jay Dee Walters, Dwight Miller was appointed to represent Cheryl Walters.

could not contact the police out of fear of reprisal.

From the evidence presented, it is apparently beyond doubt that Billy Hill is a man capable of violence against other persons and at least one dog. Hill is currently charged by the State of Kansas with killing Calvin Neu, a person he allegedly shot multiple times. Hill allegedly killed Neu for "snitching" on Hill. Until his apprehension, Hill utilized a somewhat sophisticated manufacturing system to make methamphetamine for the purpose of illicit drug trafficking. After leaving the Walters' farm, Hill successfully eluded law enforcement officers for about a month. Hill was ultimately apprehended by law enforcement officers only after a two-day standoff.

Prior to trial, the government and Jay Dee Walters entered an agreement in which the parties stipulated that Jay Dee Walters would take a polygraph examination and that the results of that examination, if conclusive, could be received into evidence at trial. The defendant agreed to the examination, hoping that by passing the examination the government would agree to substantially reduce the charges against him. Questions asked during that examination concerned only the date on which the "fear of being killed by Billy Hill" letters had been written. Unfortunately for Jay Dee Walters, he did not pass the examination. After taking the polygraph examination, Jay Dee Walters admitted that the "fear of being killed by Billy Hill" letter was written after Billy

Hill left the Walters' farm. However, Jay Dee Walters contended that Hill still threatened him at the time he wrote the letters.

Although the government and Jay Dee Walters stipulated to the admissibility of the evidence of the polygraph examination, prior to permitting the admission of the examination or its results, the court exercised its gate-keeping function under Fed. R.Evid. 702 and Fed.R.Evid. 703, *see In re TMI Litigation,* 193 F.3d 613 (3rd Cir. 1999) ("Although the 'primary locus' of the District Court's gatekeeping role is Rule 702, a court 'should also be mindful of other applicable rules,' *Daubert,* at 590, 113 S.Ct. 2786; 595, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, when conducting a *Daubert* analysis."), conducting a *Daubert*[3] hearing outside the presence of the jury to determine the admissibility of the polygraph examination. *See Miller v. Heaven,* 922 F.Supp. 495, 500–04 (D.Kan. 1996) (excluding evidence of polygraph examinations taken by plaintiff and defendant in a civil case).[4] In this case, the polygraph examiner, George Johnson of the Kansas Bureau of Investigation, was able to articulate with sufficient precision the reasons supporting his opinion that the polygraph examination administered to Jay Dee Walters was reliable. The polygraph examiner was also able to explain in substantial detail the manner in which the polygraph examination worked, the manner in which this examination had been verified by Jay Dee Walters' post-examina-

**3.** *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**4.** In *Miller,* the polygraph examiner "although confident that polygraph examinations are generally trustworthy and that the results of his examinations of Miller and Officer Heaven were reliable, was unable to demonstrate to the court's satisfaction that the requirements of Rule 702 were satisfied. The polygraph examiner, although able to discuss the reliability of polygraph examinations in general terms, was unable to articulate with

sufficient precision the reasons for its reliability and the manner with which the polygraph examinations such as those he performed on Miller and Officer Heaven have been proven reliable. In the alternative, the court excluded the evidence under Fed.R.Evid. 403. In light of the court's concern about whether it was appropriate to admit the polygraph examination under Rule 702, and in the absence of a prior agreement between the parties concerning the admissibility of the polygraph examinations, the court concluded that in this case the probative value of the polygraph evidence was substantially outweighed by the danger of unfair prejudice."

tion interview, and the peer scrutiny to which that examination had been subjected and deemed reliable. Johnson also explained that polygraph examinations similar to the one he performed on Jay Dee Walters have empirically been proven reliable.

After being satisfied that evidence pertaining to the polygraph was admissible under Rules 702 and 703, the court then engaged in an analysis under Fed.R.Evid. 403 and its inherent power to insure that the defendant receives a fair trial. Ultimately, and particularly in light of the parties' stipulation, the court permitted the government to introduce evidence regarding the polygraph examinations, including the results of that examination.[5] *See United States v. Gilliard,* 133 F.3d 809, 812 (11th Cir.1998) ("Prior to this Court's en banc decision in *United States v. Piccinonna,* 885 F.2d 1529 (11th Cir.1989) (en banc), polygraph evidence was per se inadmissible in this Circuit." *Piccinonna,* 885 F.2d at 1531–32. In *Piccinonna,* however, this Court concluded that the per se rule was unwarranted in light of the advances that had been made in the field of polygra-

phy and the lack of evidence that juries are unduly swayed by polygraph evidence. *Id.* at 1535. Specifically, we held that a district court can admit polygraph evidence in two circumstances: (1) when the parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility; and (2) to impeach or corroborate the testimony of a witness at trial. *Id.* at 1536. We were careful to note, however, that neither modification to the per se exclusionary rule "preempt[s] or limit[s] in any way the trial court's discretion to exclude polygraph expert testimony on other grounds under the Federal Rules of Evidence." *Id.*); *United States v. Ponce–Rodriguez,* 963 F.2d 381, 1992 WL 102616 (9th Cir.1992) ("Polygraph evidence is inadmissible to establish the truth or falsity of a party's statements 'unless the parties have stipulated to the admissibility of the polygraph results before the examination is administered, and the court is satisfied that the examination has been administered in a manner which supports the reliability of the polygraph results.'" *Brown v. Darcy,* 783 F.2d 1389, 1391 (9th Cir.1986).); *see also United States v. Gor-*

5. The final jury instructions in this case included the following instruction regarding the jury's consideration of evidence regarding Jay Dee Walter's polygraph examination:

INSTRUCTION NO. 29
You have heard evidence concerning a polygraph examination which Jay Dee Walters voluntarily took, pursuant to an agreement or stipulation with the government, prior to trial. In considering this evidence it is important for you to know that the reliability and accuracy of polygraph examinations is unsettled and that a number of factors, including the skill, knowledge and training of the polygraph examiner, may further affect the reliability and accuracy of the results of the examination.

When considering evidence regarding the polygraph examination, it is important for you to remember that you are the sole judges of the facts in this case and it is for you, and only you, to determine the credibility of witnesses and weight of evidence in this case. No machine is superior to your ability to assess the credibility of witnesses and you must not place undue importance on the results of the polygraph examina-

tion. A fundamental premise of our criminal trial system is that the jury is the "lie detector."

The polygraph examination does not prove or disprove any element of the crimes with which Jay Dee Walters is charged. At most, the polygraph examination may indicate that at the time Jay Dee Walters was examined, he may or may not have been telling the truth. Evidence concerning the polygraph examination constitutes only a small portion of the evidence in this case, so you should only give it such weight, if any, you deem appropriate in light of these admonishments.

The fact that Jay Dee Walters took a polygraph examination should play no role in your deliberations concerning the charges against Cheryl Walters. Consequently, Government's Exhibit # 90, and all of the evidence concerning that polygraph examination and the results of that examination, are irrelevant to your deliberations concerning the charges against Cheryl Walters.

A substantively similar limiting instruction was read to the jury immediately before the polygraph examiner testified.

*don,* 688 F.2d 42, 44 (8th Cir.1982) (polygraph evidence admissible if parties stipulate admissibility in advance of test).

Although both defendants presented evidence in their own defense, neither defendant testified at trial. The defendants' motions for judgment of acquittal at the close of the government's case and at the conclusion of evidence were denied.

On December 14, 1999, the jury began its deliberations. On December 15, 1999, the jury sent a note to the court indicating that they were deadlocked. After conferring with counsel, and over the defendants' objection, the court, in the exercise of its discretion, read an *Allen*[6] instruction to the jury. The jury returned to deliberate. The jury then sent a note indicating that they unanimously agreed that Jay Dee Walters was guilty of Count 1 (charging conspiracy to manufacture or distribute methamphetamine). However, the same note indicated that the jury was unable to reach a unanimous verdict on the other count against Jay Dee Walters (Count 2 charging harboring) and on both counts against Cheryl Walters. After consulting with the parties, the court read a partial verdict instruction to the jury.[7] The jury then returned to deliberate. The jury then informed the court that they had reached a verdict on Count 1 against Jay Dee Walters, but were hopelessly deadlocked on Count 2 against Jay Dee Walters and both counts against Cheryl Walters.

In open court, the court received the jury's verdict. The court asked the foreperson whether the jury was in fact hopelessly deadlocked and whether any further

deliberations might prove fruitful. The foreperson, as well as the rest of the jury, indicated that further deliberations would be futile and that they could not reach a unanimous verdict on the undecided counts. Hearing no objection from the parties, the court accepted the jury's verdict on Count 1 finding Jay Dee Walters guilty of conspiring to manufacture methamphetamine and declared a mistrial a manifest necessity on the remaining counts. Trial on the forfeiture count against Jay Dee Walters was set for January 18, 2000.

This case comes before the court upon the following motions filed by Jay Dee Walters:

1. Motion for Judgment of Acquittal, or, In the Alternative, For a New Trial (Dk.147).

2. Separate Defendant Jay Dee Walters' Motion for Summary Judgment/Dismissal of Forfeiture Count (Dk.152).

**1. Motion for Judgment of Acquittal, or, In the Alternative, For a New Trial (Dk.147).**

Jay Dee Walters challenges the sufficiency of the evidence, arguing that the evidence, even when viewed in the light most favorable to the government, is insufficient to sustain his conviction for conspiring to manufacture methamphetamine. As for his alternative request for a new trial, Jay Dee Walters contends that the government committed "numerous trial errors" "which places in question the fundamental fairness" of the trial he received. The

**6.** "The so-called 'Allen' or 'dynamite' charge derives its name from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." *United States v. Smith,* 857 F.2d 682, 683 (10th Cir.1988).

**7.** The partial verdict instruction provided as follows:

(1) Members of the jury, you do not have to reach a unanimous agreement on all the charges or both defendants before returning a verdict. If you have reached a unanimous agreement on some of the charges or

a unanimous agreement as to one of the defendants, you may return a verdict on those charges or that defendant, and then continue deliberating on the others. You do not have to do this, but you can if you wish.

(2) If you do choose to return a partial verdict, that verdict will be final. You will not be able to change your minds about it later on.

(3) Your other option is to wait until the end of your deliberations, and return all your verdicts then. The choice is yours.

defendant also objects to the timing and language of the *Allen* instruction which the court read to the jury.

### Judgment of Acquittal

A motion for judgment of acquittal challenges the sufficiency of the evidence. When the jury returns a verdict of guilty, the court may on such a motion set aside the verdict and enter a judgment of acquittal. Fed.R.Crim.P. 29(c). When the sufficiency of the evidence supporting a criminal conviction is challenged, the court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Miller,* 987 F.2d 1462, 1464 (10th Cir. 1993). In reviewing the sufficiency of the evidence, the court must consider both direct and circumstantial evidence, as well as reasonable inferences to be drawn from that evidence. *United States v. Davis,* 1 F.3d 1014, 1017 (10th Cir.1993) (*citing United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)). The court must accept the jury's resolution of conflicting evidence, as well as the jury's apparent credibility calls. *Davis,* 1 F.3d at 1017 (*citing United States v. Youngpeter,* 986 F.2d 349, 352 (10th Cir.1993)). " '[T]he evidence presented to support the conviction must be substantial; ... it must do more than raise a mere suspicion of guilt.' " *United States v. Torres,* 53 F.3d 1129, 1133–34 (10th Cir.) (*quoting United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991)), *cert. denied,* 515 U.S. 1152, 115 S.Ct. 2599, 132 L.Ed.2d 845 (1995). On the other hand, the evidence " 'need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.' " *United States v. Johnson,* 42 F.3d 1312, 1319 (10th Cir.1994) (*quoting United States v. Alonso,* 790 F.2d 1489, 1493 (10th Cir.1986)), *cert. denied,* 514 U.S. 1055, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995). So long as the jury's verdict is " 'within the bounds of reason,' " it will not be disturbed on appeal. *United States v. Ramirez,* 63 F.3d 937, 945 (10th Cir.1995) (*quoting Grubbs v. Hannigan,* 982 F.2d 1483, 1487 (10th Cir.1993)).

" 'A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such a finding is infirm because it is not based on the evidence.' " *United States v. Jones,* 49 F.3d 628, 633 (10th Cir.1995) (*quoting Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987) (*quoting Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1326 (11th Cir.1982))). "An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning." *United States v. Jones,* 44 F.3d 860, 865 (10th Cir.1995). The Tenth Circuit has explained this proposition in these terms:

> The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.

*United States v. Jones,* 49 F.3d at 632 (*quoting Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 895 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)). "Additionally, 'the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' " *United States v. Jones,* 49 F.3d at 632 (*quoting Galloway v. United States,* 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943)). Finally, a conviction may not be upheld by

piling inference upon inference. *Jones,* 44 F.3d at 865.

## Analysis

A rational factfinder could have reasonably concluded that the government carried its burden of proving that Jay Dee Walters knowingly conspired with Billy Hill to manufacture methamphetamine. During his post-indictment interview, Jay Dee Walters admitted that he knew that Hill was manufacturing methamphetamine and that he had obtained items which were used to manufacture methamphetamine. Jay Dee Walters stated, and his counsel repeatedly argued, however, that he only did those acts under imminent fear of death for himself and his family.

■ The defendants initially requested that the jury receive a "coercion instruction." Despite the fact that over the approximate two months Billy Hill resided at the Walters' farm the defendants arguably had numerous opportunities to escape to safety of the authorities, based upon the evidence admitted and the arguments presented by the defendants throughout the trial, the court concluded that it was appropriate to include a coercion instruction in the proposed jury instructions. *See United States v. Glass,* 128 F.3d 1398, 1409 (10th Cir.1997) ("To be entitled to a coercion instruction, the defendant must make a threshold showing of (1) immediate threat of death or bodily injury; (2) a well-grounded fear the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm.").

During the jury instructions conference, the defendants withdrew their request for the instruction, suggesting that they would hinge their defense solely on the word "voluntary" as used in the elements instructions and that it was unnecessary for the court to include the coercion instruction. The government objected to that request, arguing that in light of the defendants' ostensible defense, it would be unfair not to instruct the jury on the three elements necessary for coercion to be a valid defense. The court agreed with the government's position and included a coer-

cion instruction in the jury's final instructions. *See generally Tyler v. Dowell, Inc.,* 274 F.2d 890, 897 (10th Cir.) ("[J]ury trials in federal courts are conducted as at common law when the Constitution was adopted, under which the judge is the governor of the trial, with the inescapable duty to fully and correctly instruct the jury on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth."), *cert. denied,* 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960).

■ Although there was evidence from which the jury could have conceivably concluded that Jay Dee Walters acted only out his mortal fear of reprisal from Billy Hill, there was ample evidence that no such fear existed and that Jay Dee was a knowing and voluntary participant in the conspiracy to manufacture methamphetamine. At the time the Walters were allegedly acting under an immediate threat of death or bodily injury to themselves, their children and other family members, both Jay Dee and Cheryl Walters found solace in winning approximately $200,000 (and purportedly losing substantial sums as well) at area casinos during that two month time frame. The jury could have easily chosen to attribute Jay Dee Walters' new-found passion for gambling as inconsistent with his purported fear of Billy Hill and inconsistent with his claim that he was not a willing participant in the conspiracy to manufacture methamphetamine. *See United States v. Burch,* 958 F.Supp. 531, 534 n. 5 (D.Kan.1997) (" 'Evidence of unexplained wealth is probative and therefore admissible if it "creates a reasonable inference of the defendant's involvement in the drug conspiracy or trafficking." ' ") (*quoting United States v. Penny,* 60 F.3d 1257 (7th Cir.1995) (*quoting in turn United States v. Davis,* 789 F.Supp. 1130, 1132 (D.Kan.1992)), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)), *aff'd,* 158 F.3d 1140 (10th Cir.1998). Also, the fact that Jay Dee Walters wrote the

"fear of being killed by Billy Hill" after the date that he originally told law enforcement officers, *i.e.*, that the letters were written while Billy Hill still resided on the Walters' farm, casts serious doubt on the truthfulness of his entire story. The defendant's conviction is amply supported by the evidence.

### Standards for Motion for New Trial

■ A court may grant the defendant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. Courts view motions for new trial with disfavor and grant them only with great caution. *United States v. Chatman*, 994 F.2d 1510, 1518 (10th Cir.), *cert. denied*, 510 U.S. 883, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993); *United States v. Leeseberg*, 767 F.Supp. 1091, 1093 (D.Kan.1991). The defendant has the burden of proving the necessity of a new trial. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir.1994); *United States v. Cooley*, 787 F.Supp. 977, 984 (D.Kan.1992), *vacated in part on other grounds*, 1 F.3d 985 (10th Cir.1993). For purposes of this case, the relevant rule is that a new trial should be granted upon "[a]ny error of sufficient magnitude to require reversal on appeal." 3 Charles A. Wright, *Federal Practice and Procedure* § 556 (1982); *see United States v. Stiner*, 765 F.Supp. 663, 664 (D.Kan. 1991), *aff'd*, 952 F.2d 1401, 1992 WL 9020 (10th Cir.1992) (Table); *United States v. Suntar Roofing, Inc.*, 709 F.Supp. 1526, 1530 (D.Kan.1989), *aff'd*, 897 F.2d 469 (10th Cir.1990). The decision of whether or not to grant a new trial is committed to the sound discretion of the district court. *See United States v. Patterson*, 41 F.3d 577, 579 (10th Cir.1994).

### Prosecutorial Misconduct

■ The decision of whether to grant a defendant's motion for new trial based on prosecutorial misconduct is committed to the discretion of the district court. *See United States v. Gordon*, 173 F.3d 761, 769 (10th Cir.1999) (*citing United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir.1996)), *cert. denied*, —— U.S. ——, 120 S.Ct. 205, 145 L.Ed.2d 172 (1999).

We engage in a two-step process in reviewing claims of prosecutorial misconduct. First, we determine if the conduct was improper. Second, we determine if any improper conduct warrants reversal. *United States v. Lonedog*, 929 F.2d 568, 572 (10th Cir.1991). Reversal is necessary only if the improper conduct influenced the verdict. *United States v. Alexander*, 849 F.2d 1293, 1296 (10th Cir. 1988). In determining whether misconduct affected the outcome of a trial, we consider "the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole." *Lonedog*, 929 F.2d at 572 (*quoting United States v. Martinez–Nava*, 838 F.2d 411, 416 (10th Cir.1988)). *Id.*

### Analysis

Jay Dee Walters identifies two specific instances of alleged prosecutorial misconduct which he believes made his trial unfair. The court will address each contention.

*(1) Violation of the court's in limine ruling regarding prior bad acts.*

■ Prior to trial, Jay Dee Walters filed a motion in limine in which he sought to exclude evidence of his prior crimes, identifying his prior convictions for "possession of a controlled substance and paraphernalia" and "criminal threat" as his primary concerns. During a conference immediately before selection of the jury commenced, the court instructed the government not to mention or elicit testimony regarding the defendant's prior bad acts without first approaching the bench.

During the government's examination of the case agent, Special Agent Hupp of the Kansas Bureau of Investigation, the witness testified that Jay Dee Walters had told him that he first knew of the "Hill family" when a member of that family, Willis Hill, stole marijuana plants which Jay Dee Walters had been cultivating on his own property in 1990. No contempora-

neous objection to that testimony was lodged by the defendant. Subsequently, however, Jay Dee Walters argued that the government's witness and case agent had violated the court's in limine ruling and argued that he was unfairly prejudiced by this information.

The court notes that the defendant did not make a contemporaneous objection to the evidence as it was received, nor was a specific limiting instruction requested. In any event, although the government should have instructed its witness to have not broached the subject of the theft of Walters' marijuana plants without first obtaining permission from the court, the transgression was minor and inconsequential in the context of this trial. Evidence of how Jay Dee Walters knew the "Hills" was relevant, and given that the information concerning his initial encounter with the Hill family came from the defendant's own admission, the court would have permitted the government to introduce the statement over the defendant's objection.

In any event, the court instructed the jury that the defendant was only on trial for the matters charged in the superseding indictment.[8] "The assumption that juries can and will follow the instructions provided by the trial court 'is fundamental to our system of justice.'" *United States v. Rodriguez-Aguirre,* 108 F.3d 1228, 1237 (10th Cir.) (*quoting United States v. Cardall,* 885 F.2d 656, 668 (10th Cir.1989)), *cert. denied,* 522 U.S. 847, 118 S.Ct. 132, 139 L.Ed.2d 81 (1997). Finally, given the weight of the evidence against the defendant, this evidence, even if it should have been excluded, did not deprive the defendant of a fair trial.

**8.** Jury Instruction No. 6 states:
The defendants are on trial only for the acts alleged in the superseding indictment. They are not on trial for any other acts or conduct. In determining whether the defendants are guilty or innocent, you are therefore to consider only whether the defendants have or have not committed the acts charged in this

*(2) Improper closing argument*

 During closing argument, counsel for the defendants argued that the defendants were the true victims in this case: victims of the threats of violence from Billy Hill and victims of being wrongly accused of crimes they did not commit. During his closing comments, counsel for the government responded:

> There's a conspiracy here. There's no question this is a difficult case. It's not pleasant for anybody who's involved. The grand jury did not revictimize these defendants by indicting them on these charges. I submit to you these defendants must be held accountable for what they did and not be allowed to slip through the grasp of justice on these retrospective excuses that they've offered to you.

Trial Transcript at _____. Although neither counsel for the defendants objected at that time, in a subsequent hearing outside the presence of the jury, the defendants argued that these comments by the prosecutor were improper and that they were unfairly prejudiced by these comments, warranting a new trial.

"Prosecutors have considerable latitude to respond to an argument made by opposing counsel." *United States v. Hernandez-Muniz,* 170 F.3d 1007, 1012 (10th Cir. 1999) (*citing United States v. Janus Indus.,* 48 F.3d 1548, 1558 (10th Cir.1995) and *United States v. Coleman,* 7 F.3d 1500, 1506 n. 4 (10th Cir.1993)). "Although an improper remark by defense counsel does not necessarily justify one in response, it may provide the necessary context in which we review the prosecution's comments." *Id.* (*citing United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

superseding indictment. Even if you are of the opinion that a particular defendant is guilty of some offense not charged in this superseding indictment, you must find such defendant not guilty if the evidence does not show beyond a reasonable doubt that he has committed the specific acts charged in this superseding indictment.

The defendants' suggestion that they were victims of an unfair and unjustified prosecution clearly invited a response by the government. The prosecutor, however, would arguably have been better served to have eschewed any suggestion that the grand jury's return of a superseding indictment was in some way vindicated by the evidence presented, as the superseding indictment is only a charge; any comment militating against that proposition is one to be avoided. Notwithstanding these observations, the prosecutor's comment directly responded to the defendants' arguments and in its context was not improper.

In any event, the court repeatedly instructed the jury that the superseding indictment is merely a charge.[9] Even if the prosecutor's comment was improper, that transgression was slight and did not affect the fundamental fairness of the trial. *See United States v. Ivy,* 83 F.3d 1266, 1288 (10th Cir.1996) ("We ordinarily will not reverse if the misconduct was merely 'singular and isolated.' (citation omitted). Rather, '[t]o warrant reversal,' the misconduct must have been 'flagrant enough to influence the jury to convict on grounds other than the evidence presented.'") (quoting *United States v. Ramirez,* 63 F.3d 937, 944 (10th Cir.1995) (*quoting United States v. Lowder,* 5 F.3d 467, 473 (10th Cir.1993))), *cert. denied,* 519 U.S. 901, 117 S.Ct. 253, 136 L.Ed.2d 180 (1996).

### Appropriateness of the *Allen* Instruction

■ The purpose of an *Allen* instruction is to encourage a unanimous verdict without infringement upon the conscientious views of each individual juror. *United States v. Smith,* 857 F.2d 682, 683 (10th Cir.1988). The Tenth Circuit has "traditionally urged caution in the use of the Allen instruction." *United States v. Rodriguez–Mejia,* 20 F.3d 1090, 1091 (10th Cir.), *cert. denied,* 513 U.S. 1045, 115 S.Ct.

640, 130 L.Ed.2d 545 (1994). "The preferred rule of procedure is to give an *Allen* instruction at the same time as other instructions; however, this is not a per se rule." *Id.* The Tenth Circuit reviews "whether an *Allen* instruction was erroneously given on a case-by-case basis with a view toward determining whether the instruction had a coercive effect on the jury." *Id.* "Some factors considered in making this determination include: (1) The language of the instruction; (2) its incorporation with other instructions; and (3) the timing of the instruction, for example, whether given before the jury has commenced deliberations and whether given before the jury has reached an impasse or deadlock." *United States v. Porter,* 881 F.2d 878, 888 (10th Cir.), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

■ Nothing argued by the defendant convinces the court that a new trial is warranted based on the timing or language of the *Allen* instruction. After receiving the *Allen* instruction the jury returned to deliberate for several hours, and only then did they return a verdict on only one of the four counts against the two defendants. Under these circumstances, there is no reason to believe that any member of the jury was coerced into relinquishing their own conscientious convictions regarding the issues presented.

### Language of the Instruction

The defendant's challenge to the language of the *Allen* instruction used by the court runs aground on the shoals of Tenth Circuit precedent. The *Allen* instruction used in this case is one expressly approved by the Tenth Circuit in *United States v. Reed,* 61 F.3d 803 (10th Cir.1995). *See United States v. Ailsworth,* 948 F.Supp. 1485 (D.Kan.1996) (no abuse of discretion in giving *Allen* instruction), *aff'd,* 138 F.3d

---

**9.** Jury Instruction No. 9 provides:

A superseding indictment is only a method of accusing a defendant of a crime. It is not evidence of any kind against a defendant and

does not create any presumption or permit any inference of guilt. It is a mere charge or accusation—nothing more and nothing less.

843 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 221, 142 L.Ed.2d 181 (1998); *United States v. Burch,* 928 F.Supp. 1066 (D.Kan.1996) (no abuse of discretion in giving *Allen* instruction), *aff'd,* 113 F.3d 1247, 1997 WL 271316 (10th Cir.1997) (Table).

In sum, the court concludes that it was not error to give the jury the *Allen* instruction and that under the circumstances the instruction nor its language was coercive.

The court finds that no error, singularly or in combination, denied Jay Dee Walters a fair trial. Jay Dee Walters has not carried his burden of demonstrating that he was denied a fair trial.

**2. Separate Defendant Jay Dee Walters' Motion for Summary Judgment/Dismissal of Forfeiture Count (Dk.152).**

██ Jay Dee Walters seeks dismissal of the forfeiture count, arguing that his residence and surrounding farm are protected from forfeiture by the homestead exemption granted to him by Article 15, § 9 of the Kansas Constitution. Acknowledging that other circuits have held that federal forfeiture law preempts state homestead rights, the defendant predicts that the Tenth Circuit would see it otherwise in light of Kansas' zealous protection of family rights and homestead property. *See State ex rel. Braun v. Tract of Land,* 251 Kan. 685, 840 P.2d 453 (1992) (forfeiture of homestead under K.S.A.1991 Supp. 65–4135(a)(7)(A) violates Article 15, § 9 of the Kansas Constitution).

Title 21, § 853, provides in pertinent part:

(a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, *irrespective of any provision of State law —*

(1) any property constituting, or derived from, any proceeds the person

obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . .

(Emphasis added). The law is well-settled that federal forfeiture law preempts state law. *See United States v. 817 N.E. 29th Drive, Wilton Manors, Florida,* 175 F.3d 1304, 1311 n. 14 (11th Cir.1999), *petition for cert. filed on Sept. 7, 1999; United States v. Curtis,* 965 F.2d 610, 616 (8th Cir.1992) (federal forfeiture statute, 21 U.S.C. § 853(a), clearly superseded the homestead exemption set forth in Iowa Code § 561.16); *United States v. One Parcel Property Located at Lot 85, Ctry. Ridge,* 894 F.Supp. 397, 405 (D.Kan.1995) ("The claimant argues that his homestead is protected from forfeiture by the Kansas Constitution. The Kansas Supreme Court has ruled that forfeiture (under Kansas statute) of a homestead for drug trafficking offenses violates the homestead exemption contained in the Kansas Constitution. *State, ex rel. Braun v. Tract of Land,* 251 Kan. 685, 840 P.2d 453 (1992). The present action is brought under the federal civil forfeiture statute, § 21 U.S.C. 881, which preempts state law as to the forfeitability of homestead property"), *aff'd,* 100 F.3d 740 (10th Cir.1996), *cert. denied,* 520 U.S. 1253, 117 S.Ct. 2411, 138 L.Ed.2d 177 (1997).

IT IS THEREFORE ORDERED that Jay Dee Walters' Motion for Judgment of Acquittal, or, In the Alternative, For a New Trial (Dk.147) is denied.

IT IS FURTHER ORDERED that Jay Dee Walters' "Separate Defendant Jay Dee Walters' Motion for Summary Judgment/Dismissal of Forfeiture Count" (Dk.152) is denied.