**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Phillip Ellisor JONES, also known as Phillip Jones, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Talfred BROWN, Defendant–Appellant.**

Nos. 93–4240, 94–4030.

United States Court of Appeals,
Tenth Circuit.

Feb. 27, 1995.

Rehearing Denied June 2, 1995.

Randy S. Ludlow, Salt Lake City, UT, for defendant-appellant Phillip Ellisor Jones.

Bruce C. Lubeck, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., with him on the briefs), Salt Lake City, UT, for plaintiff-appellee U.S. of America in case No. 93–4240.

Edward K. Brass, Salt Lake City, UT, on the briefs, for defendant-appellant Talfred Brown.

Scott M. Matheson, Jr., U.S. Atty., and Bruce C. Lubeck, Asst. U.S. Atty., Salt Lake City, UT, on the briefs, for plaintiff-appellee U.S. of America in case No. 94–4030.

Before SEYMOUR, Chief Circuit Judge; MOORE, Circuit Judge; and SAFFELS, District Judge.[*]

JOHN P. MOORE, Circuit Judge.

These appeals arise from the same trial in which both appellants were jointly accused. We combine them here for ease of disposition. After reviewing the record, we conclude the government failed in its burden of proof and thus vacate the judgments of conviction.

Talfred Brown and Phillip Ellisor Jones were convicted of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), and of carrying and using a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). Both raise several issues on appeal, but we deal only with the sufficiency of the evidence.

On October 6, 1991, Utah Highway Patrol Trooper John Kelley stopped a vehicle for speeding. The vehicle was driven by Lori Grove, with Tracy Duhart in the passenger seat, and Phillip Ellisor Jones and Talfred

---

[*] The Honorable Dale E. Saffels, Senior Judge for the United States District Court for the District of Kansas, sitting by designation.

Brown in the back seat. While Trooper Kelley talked to the driver, he "observed the odor of burnt marijuana." After running a vehicle check, he returned to the car and saw "rolling papers" on the rear armrest next to Mr. Jones. Trooper Kelley ordered all four occupants to exit the car and discovered a marijuana "roach" in Mr. Jones' possession. Trooper Kelley proceeded to search both the interior of the vehicle and the trunk.[1]

While searching, he noticed a plastic screw loose in the trunk and observed the plastic trunk lining was pulled away from the trunk latch. Looking between the body of the car and the trunk lining, Trooper Kelley found a loaded pistol. After calling for backup, he resumed his search and discovered approximately 113 grams of crack cocaine eighteen inches from the place where he found the pistol.

Having negotiated the dismissal of charges against her in exchange for her "truthful" testimony, Ms. Duhart became the government's principal witness at trial. Even viewing her tale in a light most favorable to the government, as we must, it is blatant Ms. Duhart strained the limits of credulity.

According to her version of the facts, Ms. Duhart was at Ms. Grove's apartment in Denver on October 4, 1991. During that time, Ms. Grove had many telephone conversations, including several with a friend in Los Angeles called "Coco." Ms. Grove told Ms. Duhart "Coco" had just broken up with his girlfriend and wanted to come to Denver but was afraid to fly alone. Ms. Grove suggested that she and Ms. Duhart fly to Los Angeles and accompany "Coco" back to Denver. Although Ms. Duhart testified she understood the two women were going to return immediately to Denver, she inexplicably borrowed clothing and toilet articles from Ms. Grove and packed a bag to take with her.

The duo arrived at the airport, and Ms. Grove attempted to purchase tickets with a check. When the ticket agent refused to accept that means of payment, Ms. Grove paid $402 cash for two one-way tickets. The two women arrived in Los Angeles after midnight on October 5th. Mr. Brown, who was identified by Ms. Grove as "Coco," met them at the airport. He introduced both Ms. Grove and Ms. Duhart to his companion, Mr. Jones.

Although Ms. Duhart apparently expected to make an immediate return to Denver, she testified the four nonetheless agreed to go to a motel in Los Angeles where Mr. Brown obtained two rooms for the night. The next morning, they discussed renting a car to drive to Denver. To facilitate their local transportation, Mr. Brown left and returned with a brown car in which all drove to a rental car agency. After what Ms. Duhart testified was "probably three hours, maybe even four," because of difficulty in establishing the necessary qualifications, Ms. Duhart rented the car in her name, paid for by Ms. Grove's mother's credit card.[2]

Having transferred the women's bags to the trunk of the rental car, the four drove the two vehicles to another neighborhood unfamiliar to Ms. Duhart to return the brown car. Mr. Brown gave the car keys to a man standing outside a house, went in, and returned shortly. Mr. Brown asked Ms. Grove to "pop the trunk," and he and Mr. Jones stood at the rear of the car "for a little while." Ms. Duhart could not see what they were doing nor hear what, if anything, they were saying. Ms. Duhart's only observation was that Mr. Brown walked out of the house "with his shirt untucked ... but before he went in his shirt was tucked in."

The group then returned to the motel where the women showered and changed clothes.[3] The four next drove the rental car to Mr. Brown's girlfriend's house to obtain his belongings. Mr. Brown went inside and returned with some clothes, which he and Mr. Jones put into the trunk with other items they had already stored there while the car was parked at the motel.

---

1. The validity of these searches has not been raised in this appeal.

2. The rental agreement indicates the car was delivered at 18:55 (6:55 p.m.). Assuming the transaction took four hours, it is unexplained, and therefore unclear, what transpired in the six hours between the time the parties arose and the time they arrived at the rental agency.

3. Ms. Duhart stated Mr. Jones obtained a "new room" for this purpose.

Again, Ms. Duhart did not see what the men were doing at the car trunk. She nonetheless stated she saw Mr. Brown with his clothes as he walked by the car, and "when he came back to the front of the car he did not have the clothes." She assumed, therefore, "he put those in the trunk of the car." At the same time, she heard no conversation between the two men.

Mr. Brown then returned to the front of the car, and while talking to Ms. Grove, "he was under the dashboard and he was feeling around under there." He then "got out and went to the front of the car where the hood was and was feeling around under there." Mr. Brown said nothing while conducting his explorations. The two men then got into the car, and the group began its journey to Denver.

At this juncture, it is noteworthy that the government's principal witness, the only witness who could have connected either defendant to the gun and the crack cocaine, saw neither a gun nor a package of any kind remotely resembling the package of crack cocaine. Thus, there is no direct evidence in the record tying either defendant to the items which formed the basis of the charges against them. Moreover, the government was unable to identify any fingerprints on the gun or the package of crack cocaine, and no one attempted to obtain prints from the interior of the trunk where those items were found. Consequently, the government's entire case stands or falls upon Ms. Duhart's testimony, which we have set forth in its entirety.

Nonetheless, the government argues there is sufficient evidence to support both convictions. The prosecution claims a reasonable jury could have found defendants guilty beyond a reasonable doubt upon the direct and circumstantial evidence contained in the record and the reasonable inferences drawn from such evidence. *United States v. Leopard,* 936 F.2d 1138, 1140 (10th Cir.1991);

*United States v. Coslet,* 987 F.2d 1493, 1495 (10th Cir.1993).

First, the government relies extensively on inferences drawn from Ms. Duhart's testimony, depending heavily upon the facts Mr. Brown looked under the dashboard and hood of the car, and spent a few minutes by the trunk. The government argues these facts indicate Mr. Brown was looking for a place to hide the drugs and the gun. The government also contends the jury could have drawn an inference the women did not travel from Denver with the gun because of the jury's assumed knowledge that airport metal detectors would not have allowed them to carry the gun on an airplane. The government also contends there are guilty inferences in the bizarre circumstances of Ms. Grove and Ms. Duhart's flying to Los Angeles to pick up Mr. Brown and Mr. Jones and their driving back to Denver. Moreover, the government suggests, Mr. Jones' failure to offer a "valid reason" for traveling to Denver also supports this inference.[4] The government also points to Ms. Duhart's testimony that while the group was waiting at the side of the road following the stop by Trooper Kelley, Mr. Brown said he "should have smoked him."[5] This evidence, the government argues, was sufficient for a jury to conclude the defendants "knew about the drugs, had some right to control over them, helped or aided in their transportation, and that the drugs were for delivery to someone else."

Second, the government argues that sufficient evidence also exists to support conviction on the firearms charge. Under 18 U.S.C. § 924(c), the government may prove defendants either used or carried the firearm. The use requirement is satisfied if defendants had "ready access" to the firearm and it was an "integral part" of their drug trafficking. *United States v. Ross,* 920 F.2d 1530, 1536 (10th Cir.1990). This court has held that the requirement was met when a gun was kept at home where drugs were

---

4. Of course, Mr. Jones was not obliged to provide any explanation for his actions. In any event, no one apparently asked him why he was making the trip, or if he was asked, no one testified about his reply. Thus, to suggest his failure to offer a reason for accompanying Mr.

Brown permits an incriminatory inference is without logic.

5. There was no effort made to explain this statement.

distributed. *United States v. Williams,* 923 F.2d 1397, 1402–03 (10th Cir.1990), *cert. denied,* 500 U.S. 925, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991). Similarly, in a case where a defendant was arrested in his car with drugs and other indications of drug selling nearby and a gun was found underneath the driver's seat where he sat, we held the government established use. *United States v. McDonald,* 933 F.2d 1519, 1525–26 (10th Cir.), *cert. denied,* 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). *Williams* and *McDonald* indicate the type of evidence necessary to support a conviction. The government maintains the evidence in this case is similar.

■ Alternatively, the government argues it may prove the defendants were "carrying" the gun. Carrying may be established by transporting the gun in a vehicle. *United States v. Cardenas,* 864 F.2d 1528, 1533 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). The government must also link the use or carrying of the firearm to the drug trafficking. This requirement is met with proof that the defendant intended the weapon to be available for use during the drug transaction. *United States v. Nicholson,* 983 F.2d 983, 990 (10th Cir.1993). In this case, the prosecution argues the handgun was within easy reach upon entry into the trunk and was found within one foot of the drugs. This could allow the jury to find that it was intended for use in protecting the drugs.

■ We review sufficiency of evidence claims by viewing all the evidence in the light most favorable to the government. The court must "determine whether any reasonable jury could find the defendant guilty beyond a reasonable doubt." *Coslet,* 987 F.2d at 1495. A conviction for possession with the intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), may be supported by a finding of constructive possession by the jury. "Constructive possession may be found if a person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." *Id.; United States v. Hager,* 969 F.2d 883, 888 (10th Cir.), *cert. denied,* ——

U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

■ Even with this standard limiting our view of the evidence, we find a critical flaw in the government's case. Recognizing its entire prosecution is built upon circumstantial evidence, the government depends upon inferences to carry its burden. A principle the government has overlooked, however, is probative inferences "must be more than speculation and conjecture." *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987) (citing *Galloway v. United States,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943)). "A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such a finding is infirm because it is not based on the evidence." *Sunward,* 811 F.2d at 521 (quoting *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1326 (11th Cir.1982)). Although we noted in *Sunward* a reasonable inference and mere speculation may be difficult to distinguish, we adopted the approach of the Third Circuit:

> The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.

*Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 895 (3d Cir.) *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). Additionally, "the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." *Galloway,* 319 U.S. at 395, 63 S.Ct. at 1089.

We cannot permit speculation to substitute for proof beyond a reasonable doubt. Even though rational jurors may believe in the likelihood of the defendants' guilt, as they probably did in this case, they may not con-

vict on that belief alone. It cannot be equivocated that a conviction without supporting evidence must fall.

What the government contends constitutes reasonable inferences simply does not sustain a logical probability. For example, the prosecution's suggestion that Mr. Brown's explorations under the dash and hood are inferential of his attempt to hide the drugs and gun is illogical because it piles one inference upon another. To justify the inference Mr. Brown was trying to hide these items, there must have been some proof he possessed items to hide. Without such proof, the suggestion he was trying to *hide* something is conjecture. The only reasonable inference which is logically probable on the state of the evidence is that Mr. Brown was *looking* for something under the dash and hood. What he was seeking, again, is pure speculation. Thus, the inference he was attempting to hide something, let alone that he was trying to hide a gun and drugs, simply does not logically flow from the established facts.

Of the same ilk is the government's suggestion the jury could have inferred the defendants must have possessed the gun because it is impossible to carry a firearm on a plane. Assuming for the moment that in the absence of testimony the jury could have drawn on common experience to conclude guns cannot be transported on commercial aircraft, that knowledge does not inexorably lead to the inference either defendant possessed the gun. That inference might have been logical if the facts showed only the two women or the defendants and no one else could have placed the gun in the car. Upon the evidence produced by the government, however, it is an equally logical inference that the gun was in the car when it was rented. Indeed, no fact proved by the government logically implies how the gun or the drugs got into the trunk in the first place. Ms. Duhart, the only witness in a position to see defendants with the illicit items, denied having done so. Thus, the government's "proof" is nothing more than speculation.

The government seeks to overcome this problem by arguing Mr. Jones had a blue bag of sufficient size to hold the gun. Yet, despite its size, there is absolutely nothing in the record to otherwise connect the gun to the blue bag. There is no testimony that the blue bag seemed heavy, that it appeared to contain a bulky item, that it had an oily residue, nor any other evidence suggesting the presence of a firearm. Indeed, from the state of the record, it is an equally plausible inference that the blue bag was always in the condition in which it was found: empty.

The government also argues the bizarre conduct of these four people is inferential of drug trafficking. While there is no doubt Ms. Duhart's version of the events is patently inconsistent and of dubious credibility, taking the next step to infer bizarre actions imply illicit conduct is of questionable logic. To then take the further step and infer the illicit conduct was drug trafficking is pure conjecture. There is nothing in the evidence which would have led the jury in logical steps from Ms. Duhart's testimony of bizarre activity to a verdict of guilty.

Finally, Mr. Brown's statement he should have "smoked him" is at best equivocal. From the record, we have no idea what that statement meant because there was no effort made to explain it. We assume the jury was left to speculate what "smoke" means and that the object of the smoking was Trooper Kelley. The government made no attempt to aid the jury so it could have drawn a logical, if not weighty, inference from that statement. Ascribing a criminal motive to that statement now is simply surmise.

While trial courts are generally reluctant to direct verdicts of acquittal, the motions to dismiss should have been granted here. Notwithstanding the critical evidence spewed by Ms. Duhart defies logic, and regardless of the inherently suspicious nature of the conduct of the four people in this case, the jury should not have been allowed to substitute its *belief* about what *probably* occurred for what the government actually proved. We cannot permit the verdict to stand.

In suggesting we have substituted our judgment for that of the jury, the dissent has missed the point. We have looked at the testimony of the government's key witness in a light most favorable to the prosecution and have discovered it wanting. For the reasons

we have explained, nothing within that testimony beyond surmise and conjecture provides the jury with any evidence, direct or circumstantial, tying the defendants to the gun and drugs discovered hidden in the trunk of the car ostensibly rented by Ms. Duhart.

For example, the dissent states defendants had access to the trunk and stood near its open door on "at least two occasions" suggesting these facts provide proof upon which the jury could have relied. We heartily disagree. Without more, and there is no more, that is proof only that defendants stood by the open trunk. It would be by the rankest speculation that any juror could infer from the fact defendants stood by an open trunk defendants had possessed cocaine and a gun and had hidden them in that location. Moreover, the irrationality of such an inference is increased in magnitude by the fact that the only items Ms. Duhart ever saw in defendants' possession were clothes defendants put in the trunk where they were later found by Trooper Kelly.

Although the dissent correctly states an appellate court cannot rule upon the credibility of a witness, that is not what we have done in Ms. Duhart's case. It is not a determination of credibility to point out the testimony of a witness is blatantly inconsistent or defiant of common logic. Our statement of Ms. Duhart's credulity is based upon internally contradictory utterances she made in her testimony, and not upon our reaction to that testimony. Indeed, even the government in its argument referred to Ms. Duhart's story about the trip as "bizarre." We thus believe, although taken in the light most favorable to the government, the facts upon which our observation of the nature of Ms. Duhart's testimony is based are so patent, reporting them does not constitute a weighing of her credibility.

For example, assuming she testified truthfully when she said she believed she was returning immediately to Denver, her subsequent testimony that she borrowed a change of clothes and other personal items to take with her is a non sequitur. Moreover, those statements are patently inconsistent and stretch credulity, even in the eyes of the most impartial observer. When the entirety of the testimony of the government's key witness is peppered with that kind of inconsistency, we cannot turn our back upon it under the premise of not invading the province of the jury. Our duty as appellate judges transcends such a benign review of the evidence.

Finally, the dissent further errs in assuming we question the judgment of the jury. As we have already noted, we simply believe the district court erred by permitting the jury to consider the case in the first instance. The court should have granted the defense motion to dismiss at the close of the prosecution's case. That is a judicial judgment quite removed from the province of the jury and one we are uniquely qualified to render.

**JUDGMENT OF CONVICTION IS VACATED.** The mandate shall issue forthwith.

SAFFELS, Senior District Judge, dissenting:

Because I cannot support the decision by the majority to substitute its determination of witness credibility for that of the jury, I dissent.

From the outset, it is clear that the majority questioned the credibility of Tracy Duhart and consequently determined that the jury could not have found the defendants guilty beyond a reasonable doubt.[1] I fear the court has invaded the province of the jury and erroneously taken on the role of trier of fact.

"An appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier. [I]t is for the jury to decide which witnesses to believe and which not. Once the jury has spoken, this court may not reweigh the credibility of witnesses." *U.S. v. Youngpeter,* 986 F.2d 349, 352–53 (10th Cir.1993). Credibility determi-

---

**1.** The majority states: "... it is blatant Ms. Duhart strained the limits of credulity." Again, the majority attacks Ms. Duhart's testimony and states: " ... there is no doubt Ms. Duhart's version of the events is patently inconsistent and of dubious credibility...." Once more the majority questions the testimony of the witness when it comments "Notwithstanding the critical evidence spewed by Ms. Duhart defies logic...."

nations are for the jury, not the appellate court. *U.S. v. Uresti–Hernandez,* 968 F.2d 1042, 1045 (10th Cir.1992).

"In determining whether evidence is sufficient.... [w]e will not weigh evidence or determine credibility. Appellate reversal on grounds of insufficient evidence should be confined to cases where the failure of the prosecution is clear. The evidence need not be unconnected to every condition save that of guilt." *U.S. v. Cardono–Usquiano,* 25 F.3d 1194, 1201 (3d Cir.1994).

"An appellate court can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. This standard is a strict one and a jury verdict will not be overturned lightly." *U.S. v. Frayer,* 9 F.3d 1367, 1371 (8th Cir.1993), *cert. denied, Haney v. U.S.,* —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994). A defendant must meet a heavy burden to gain reversal on a claim of sufficiency of the evidence. The defendant must show that *no* reasonable jury could have found him guilty beyond a reasonable doubt (emphasis added). *U.S. v. Innamorati,* 996 F.2d 456, 460 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1073, 127 L.Ed.2d 391 (1994).

The defendant argues that "if evidence is consistent with both innocence and guilt, it cannot support a conviction." *United States v. Varoz,* 740 F.2d 772, 775 (10th Cir.1984). The majority seems to implicitly concur by offering its discussion of "equally plausible inference[s]." However, this court in *United States v. Hooks,* 780 F.2d 1526, 1530 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986) clearly stated that its past use of "consistent with both innocence and guilt" language in numerous opinions, including *Varoz,* was unfortunate and antithetical to the decisions of the United States Supreme Court in *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954) and *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979). It is erroneous to suggest that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence. *Id.*

Ms. Duhart testified that the defendants: had access to the trunk; were at the rear of the car with the trunk open on at least two occasions; carried certain items when they were at the rear of the car with the trunk up and which were not brought into the passenger compartment; conducted a search under the dashboard and under the hood; and pretended to be asleep when Officer Barney pulled the car to the side of the road.

The jury, as all juries are, was free to believe this testimony. It is inconsistent with the role of appellate courts for us to now decide the jury was not free to believe that testimony on the basis of our reading of a cold record. "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilty beyond a reasonable doubt, may an appellate court overturn the verdict." *U.S. v. DePriest,* 6 F.3d 1201, 1206 (7th Cir.1993). Only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment may a trial judge or an appellate court reverse a jury verdict. 5 A J. Moore's Federal Practice ¶ 50.07[2] (2d ed. 1984).

I do not believe this is one of those rare cases that contains no evidence to support the jury verdict or for which there is only one reasonable conclusion as to the proper judgment. I do believe the jury properly exercised its judgment and that we are not now free to question that judgment even though we might, had we been members of the jury, have reached a different conclusion.

I, therefore, respectfully dissent.