F I L E D
**United States Court of Appeals
Tenth Circuit**

**JUN 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

GENARO JARAMILLO-GARCIA,

      Defendant - Appellant.

No. 99-2226
(D.C. No. CR-98-653)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **ANDERSON** and **LUCERO**, Circuit Judges.

A jury convicted defendant-appellant Genaro Jaramillo-Garcia ("Genaro") of conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 846, possession with intent to distribute more than 50 kilograms of marijuana and aiding and abetting in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and knowing and intentional use of a minor to commit possession with intent to distribute marijuana in violation of 21 U.S.C. § 861(a)(1) and 18 U.S.C. § 2. The district court sentenced him to 135 months

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment and eight years supervised release. He appeals his conviction on the grounds that mere inferences connect him to the marijuana conspiracy and that there is insufficient evidence of his constructive possession of the marijuana seized. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

# I

The facts as they emerged at trial paint a picture of a "family-style" drug smuggling operation.[1] Events leading to Genaro's arrest began on February 2, 1998, when customs officials at a New Mexico border station found drugs stashed in a van driven by Genaro's sister-in-law, Ani Lou Jaramillo. Also present in the van were San Juana Jaramillo (Genaro's mother), Ester Lugo (Genaro's common-law wife), and other relatives including Maria de Rosa Jaramillo, Norma Jaramillo, and numerous children. Search of one of the passengers in the van also revealed a key to a room at the Crossroads Motel in Albuquerque, New Mexico.

About one hour later, a second vehicle arrived at the same customs checkpoint, carrying Genaro, his father, Raymundo Jaramillo, Sr. ("Raymundo Sr."), and his brother, Raymundo Jaramillo, Jr. ("Raymundo Jr."), who was driving. Although the three of them appeared to be interested in ascertaining who was being detained and a detector dog alerted the agents to the presence of drug

---

[1] Because most of those involved in the drug conspiracy are part of the Jaramillo family, the members of the Jaramillo family are identified by their first names.

odors in their car, the customs agents found no drugs on them. Genaro and Raymundo Jr. admitted to having been married to Ester and Ani Lou, respectively, but claimed they were divorced and had not seen the women in a long time.

Customs agents arrested Ani Lou and Ester, Raymundo Sr., and others, but not Genaro and Raymundo Jr. Ani Lou and Ester later became cooperating witnesses, and provided information which led to the arrests of Genaro and Raymundo Jr. Ani Lou testified at trial that the family, including Genaro, had gathered together in a Mexican border town immediately prior to apprehension to plan the smuggling of the marijuana. This plan consisted of sending the van with the women and children first, in the hope that customs inspectors would be less suspicious of the women and children than of the men. The men would follow the van to Albuquerque, New Mexico, alert the drug source if the van was stopped, and meet at the Motel 6 or Crossroads Motel in Albuquerque. Ani Lou testified that Genaro, along with Raymundo Jr. and Sr., loaded the marijuana into the van. She also described previous similar trips, during four of which Genaro had been physically present. Raymundo Jr. and Genaro allegedly forced the women to participate in the operation with threats and had them register the motel rooms at the Motel 6 and Crossroads in their names in order to deflect suspicion from the men in case of apprehension. She also testified that San Juana would distribute the proceeds of their drug trips among all adults present including Genaro.

Ester testified that Genaro recruited her into selling drugs with his parents. She had been on several smuggling trips prior to the February 2, 1998, trip which resulted in her arrest. Her testimony corroborated that of Ani Lou's to the effect that the group would take their children to distract suspicion and that they stayed in motels in Albuquerque often registered in Ester's name under threats from Genaro. These threats often materialized into beatings. Genaro paid Ester for her participation. Although he was not physically present on all of the trips in which Ester participated, he was, according to Ester, an active participant in the smuggling operation.

Records obtained during the investigation further corroborate the drug smuggling operation described by Ani Lou and Ester. Hotel records from the Motel 6 and Crossroads Motel in Albuquerque verify the Jaramillos' stays at those motels during the course of the drug operation on the dates alleged by Ani Lou and Ester. Customs records show other dates on which the van apprehended on February 2 crossed the international border, corroborating both Ani Lou and Ester's testimony and the motel records. Agents testifying at trial stated that based on their experience, the use of two cars, one to transport the drugs and a second car further behind to track the first was consistent with drug smuggling operations.

After the close of the government's case, Genaro made a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. The district court denied the motion and the jury found him guilty of conspiracy to possess with intent to distribute marijuana, possession with intent to distribute marijuana and aiding and abetting, and knowing and intentional use of a minor to commit possession with intent to distribute marijuana. This appeal followed.[2]

## II

In reviewing both the sufficiency of the evidence to support a conviction and the denial of a motion for judgment of acquittal, this Court must review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See United States v. Schluneger, 184 F.3d 1154, 1158 (10th Cir. 1999), cert. denied, 120 S. Ct. 800 (2000); United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996). The evidence necessary to support a verdict "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999) (internal quotation and citation omitted). When reviewing the denial of a motion for judgment of acquittal made

---

[2] Raymundo Jr. only contested his sentence on appeal, which we affirmed. See United States v. Jaramillo-Garcia, No. 99-2229, 2000 WL 289614 (10th Cir. March 20, 2000).

at the close of the government's case-in-chief, we look only to evidence on record

at the time of the motion, that is, at the time the government rested.  See Fed. R.

Crim. P. 29(a) & (b).

## A

The elements of conspiracy are as follows:

> To prove conspiracy, the government must show "[1] that two or
> more persons agreed to violate the law, [2] that the defendant knew
> at least the essential objectives of the conspiracy, . . . [3] that the
> defendant knowingly and voluntarily became a part of it," and [4]
> that the alleged coconspirators were interdependent.

United States v. Evans, 970 F.2d 663, 668 (10th Cir. 1992) (quoting United States

v. Fox, 902 F.2d 1508, 1514 (10th Cir. 1990)).[3]  Genaro argues there was

insufficient evidence to establish his involvement in the drug conspiracy.

Viewed in the light most favorable to the government, the facts include the

following:  Genaro recruited Ester to participate in the conspiracy, he knew of it,

_____

[3]  According to Genaro, his conviction should be reversed because "[t]he 'initial idea' for the conspiracy was not shown to be [h]is." (Appellant's Br. at 24 (quoting United States v. Davis, 965 F.2d 804, 812 (10th Cir. 1992).)  It is simply not an element of conspiracy that the defendant be the leader, organizer, or initiator of the conspiracy.  Cf. Evans, 970 F.2d at 668 (setting forth the elements of conspiracy).  Our reference in Davis, 965 F.2d at 812, to the fact that the initial idea for the conspiracy derived from someone other than the defendant rebutted the government's argument that because the defendant benefitted from the conspiracy, the jury could infer that the defendant was "illegally benefitting from," or illegally involved in, the conspiracy.  We rejected the government's theory and reversed the conviction because there was insufficient evidence to prove that the defendant had agreed with one or more other persons to violate the law.  See id. at 814.  Here, there is evidence that Genaro not only agreed to violate the law, but also coerced others into participation.

he paid her for her work in it, and he instructed her to register motel rooms in her name to avoid connecting him with the drug smuggling trips. Ani Lou likewise testified as to his participation.[4] The corroborating evidence consists largely of motel records and testimony from customs agents. We resolve conflicting evidence in favor of the government, see United States v. Parker, 53 F.3d 1500, 1516 (10th Cir. 1995), and are mindful that the credibility of witnesses is for the jury to evaluate, see United States v. Davis, 965 F.2d 804, 811 (10th Cir. 1992). Viewing the evidence in the light most favorable to the government, we conclude that a reasonable jury could have found Genaro guilty of conspiracy to possess with intent to distribute marijuana.

Despite the testimony of Ani Lou and Ester directly implicating him in the conspiracy and the evidence corroborating that testimony, Genaro directs us to United States v. Anderson, 981 F.2d 1560, 1563 (10th Cir. 1992), in which we held that a court "cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference." Id. at 1564 (quoting United States v. Austin, 786 F.2d 986, 988 (10th Cir. 1986)) (further citations omitted). Genaro is

---

[4] Relying on United States v. Jones, 808 F.2d 754, 756 (10th Cir. 1987), which discounted ambiguous testimony regarding participants in a conspiracy because it was not possible to discern "who 'they' were," Genaro contends there is insufficient evidence to support his conviction because Ani Lou and Ester's testimony is similarly vague. This argument is meritless because there is ample testimony from both women implicating Genaro by name.

-7-

correct that in several cases, we have "reversed conspiracy convictions because the evidence created only a suspicion of association with criminal activities." United States v. Esparsen, 930 F.2d 1461, 1474 n.14 (10th Cir. 1991) (citing cases). Moreover, "we may not uphold a conviction obtained by piling inference upon inference," United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998) (citing United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)), but a "jury may draw reasonable inferences from direct and circumstantial evidence," United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997) (citation omitted). In Anderson, the lack of direct testimony implicating Anderson created the necessity to pile inference upon inference. Anderson was linked to the conspiracy by the following facts: he was twice seen at the doorway of a house in which nearly 2,000 pounds of marijuana were found; his photograph with two conspirators was found at the house; and phone records showed Anderson calling numbers also called by conspirators. See Anderson, 981 F.3d at 1563. In the instant case, inferences drawn from Genaro's family relationships, his presence in a car following the drug van, and other circumstantial evidence are not the core of the evidence presented, but rather merely corroborate the direct testimony of Ani Lou and Ester implicating him.

Genaro's reliance on Evans, 970 F.2d at 673-74, is likewise misplaced. In Evans, we were faced with the question of whether a defendant who purchased

four ounces of crack on one occasion and lent scales to conspirators knowing that they would be used to measure drugs, thereby had agreed to participate in an extensive drug distribution conspiracy. See id. We found that evidence insufficient to establish the defendant's agreement to participate in the conspiracy. See id. at 671-73. Contrasting the large scope of the conspiracy with the defendant's single four-ounce purchase, we concluded there was no evidence she was aware of, or joined, the larger conspiracy alleged, see id. at 673-74, and "at the most, [the defendant] joined [the other defendants] in a much smaller conspiracy to distribute crack cocaine on one instance," id. at 674. We reasoned that "[m]ere knowledge of illegal activity, even in conjunction with participation in a small part of the conspiracy, does not by itself establish that a person has joined in the grand conspiracy." Id. at 670; see also United States v. Slater, 971 F.2d 626, 630 (10th Cir. 1992) (stating that one does not "become a member of a conspiracy merely by associating with conspirators known to be involved in crime . . . because guilt is always dependent on personal and individual conduct" (citations omitted)).

Attempting to analogize his circumstances to that of the defendant in Evans—based on the fact that he was not present on all of the drug smuggling trips—Genaro contends that at most the government presented evidence of mere knowledge of small parts of the conspiracy, but not of his involvement in the

larger smuggling operation. However, direct testimony implicated him as a major organizer in the entire scheme of smuggling trips. Evans, like Anderson, is conspicuous for the lack of testimony by co-conspirators affirmatively establishing the defendant's involvement. That distinction is an important one that cannot be overlooked.

The testimony of Ani Lou and particularly that of Ester could lead a jury to infer beyond a reasonable doubt that Genaro was an organizer and leader of the conspiracy and that he coerced the two women into traveling with the drugs and registering for the hotels in their own names in order to divert attention from himself and avoid apprehension and detection.

**B**

As to Genaro's conviction for possession with intent to distribute marijuana, we are presented with the issue of whether there was sufficient evidence to establish his constructive possession of the drug. A court may find constructive possession "if a person knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found." United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996) (quoting United States v. Jones, 49 F.3d 628, 632 (10th Cir. 1995)). "Where possession is not clear, such as when the contraband may be attributed to more than one individual, constructive possession requires some nexus, link, or other connection between

the defendant and the contraband." Id. (citing United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994)). "The government may prove constructive possession by circumstantial evidence." Mills, 29 F.3d at 549 (citation omitted).

Because he did not physically possess the drugs due to his presence in a different car, Genaro argues there was insufficient evidence to establish his constructive possession of the marijuana. Contrary to Genaro's contention, the evidence to support constructive possession was substantial and raised more than "a mere suspicion of guilt." United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997) (quoting United States v. Sanders, 929 F.2d 1466, 1470 (10th Cir. 1991)). The government presented evidence that Genaro loaded the drugs, followed the van, planned to meet the van in Albuquerque, and although he denied exercising control over the van, he exercised control over Ester's actions by means of beatings and threats. This evidence supports "at least a plausible inference that the defendant had knowledge of and access to the . . contraband." Id. at 1145 (internal quotations and citations omitted). A jury could reasonably infer that this gave him control over the van and its contents.

Relying on Reece, 86 F.3d at 994, Genaro argues the government failed to meet its burden to prove that he knowingly and intentionally possessed the marijuana. In Reece, 86 F.3d at 996-97, the court found no constructive possession on the part of a driver who denied prior knowledge of his passenger's

drugs. Although the government offered a theory that the driver and passenger were acting in concert to distribute the drugs, see id. at 996, absent from Reece was any testimony by either of the participants in the alleged conspiracy implicating the defendant. There, the court properly rejected an attempt to infer constructive possession from mere proximity. The evidence in the instant case, as noted, involves more than mere proximity, but also includes direct testimony implicating Genaro in coordinating the smuggling scheme and in loading the drugs into the van.

Also without merit is Genaro's reliance on Mills, 29 F.3d at 545, for the proposition that the government has failed to show constructive possession. In Mills, the defendant lived in the same house as another occupant, Judy Hall. See id. at 547. At the instruction of police seizing a truck parked at the house, the defendant removed several guns from the truck and put them in the garage. See id. One week later, the guns were found in a compartment of a table owned by Hall. See id. at 547, 550. Again, no one testified that the guns belonged to Mills. The court rejected the theory that his placement of the guns in the garage, and their later presence in the table, was sufficient evidence to establish constructive possession. See id. at 550. "[T]he government had to come forward with evidence to connect Mills with knowing constructive possession of the firearms extending beyond his handling them" a week before. See id. Here, Genaro's

loading of the truck is much more proximate in time than the unloading at issue in Mills. Evidence that Genaro loaded the contraband and that he, at least in part, was organizing and exercising control over the shipment is sufficient to meet this threshold. Viewing the evidence in the light most favorable to the government, a reasonable jury could find him guilty of possession with intent to distribute marijuana.

## III

The judgment of the district court is **AFFIRMED.**

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge