**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT ESCAMILLA,

    Defendant-Appellant.

No. 01-4104
(Utah)
(D.Ct. No. 2:99-CR-641-02-J)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

Robert Escamilla was convicted by a jury of one count of possession of a

controlled substance (methamphetamine) with intent to distribute in violation of

21 U.S.C. § 841(a)(1). He challenges his conviction on three grounds: (1) the

evidence was insufficient to show he had constructive possession of the

methamphetamine; (2) the district court erred in a chain of custody ruling and

thereby abused its discretion by admitting the methamphetamine into evidence;

---

    [*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and (3) interference by the co-defendant's attorney compromised Escamilla's attorney-client relationship and denied him effective assistance of counsel. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

On November 3, 1999, Escamilla and co-defendant Juan Arnulfo-Sanchez were stopped by a Utah Highway Patrol Sergeant on I-70 near Salina, Utah, for two traffic violations. Sanchez, the driver of the vehicle, provided the officer with a valid driver's license. Both Escamilla and Sanchez claimed they had obtained the car from a friend named David but neither knew his last name. Escamilla then produced a California vehicle registration, which showed David Guarcia as the owner of the vehicle.

Standing outside the vehicle, the officer detected a putrid odor, which he believed to be indicative of methamphetamine. When asked about their travel plans, Sanchez stated he and Escamilla were traveling to Indiana to attend a family reunion but could not specify where the reunion was being held. Escamilla added that they were to call a family member to confirm the location once they arrived in Indiana.

Subsequently, the officer obtained Escamilla and Sanchez's consent to search the vehicle. Using his nose, the officer eventually discovered a hidden compartment under the rear seat containing approximately twenty pounds of

methamphetamine. A gas can, a bag of dog food and two bags of clothing were found inside the trunk. One of the bags of clothing, bearing a tag with Sanchez's name and address on it, contained a day planner. A search of the passenger compartment revealed another day planner with an airline ticket stub issued to Escamilla.

Escamilla and Sanchez were arrested. At the time of their arrest, Escamilla and Sanchez were carrying $1,872 and $991 in cash in their wallets, respectively. Escamilla was also carrying a small quantity of cocaine in his sock.

## II. Discussion

### a. Sufficiency of the Evidence

Escamilla contends the evidence at trial was insufficient to prove he had constructive possession of the methamphetamine.

Sufficiency of the evidence claims are reviewed de novo. *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir.) (citation omitted), *cert. denied*, 537 U.S. 1024 (2002). The question is "whether, taking the evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* (citation and internal quotations omitted). In making this determination, we will not re-weigh the evidence or make credibility determinations. *Id.* (citations omitted).

To establish a violation of 21 U.S.C. § 841(a)(1), the government must prove "the defendant knowingly possessed a controlled substance with the intent to distribute." *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.) (citations omitted), *cert. denied*, 475 U.S. 1128 (1986). "Possession may be actual or constructive and may be proved by circumstantial evidence." *Id.*

An individual constructively possesses a controlled substance if he "knowingly has ownership, dominion or control" over it. *United States v. Jones*, 49 F.3d 628, 632 (10th Cir. 1995) (internal quotations and citations omitted). In most cases, if a defendant has exclusive possession of a premises or vehicle, "[d]ominion, control, and knowledge . . . may be inferred.'" *United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996) (internal quotations and citations omitted). However, where there is joint occupancy of a residence or vehicle, this inference is inapplicable and the government must show, through direct or circumstantial evidence, "some connection or nexus individually linking the defendant to the contraband." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) (citations omitted). The evidence presented must support "at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." *Id.* (internal quotations and citations omitted).

Because the methamphetamine was contained in a hidden compartment in a vehicle Escamilla did not own, his mere presence in the vehicle cannot sustain the

jury's verdict. *Hooks*, 780 F.2d at 1531; *see also Valadez-Gallegos*, 162 F.3d at 1262 (presence and proximity are insufficient for a finding of constructive possession). Likewise, because the government did not establish that Escamilla was familiar with the smell of methamphetamine, the mere presence of an odor in the vehicle does not, by itself, show he knew methamphetamine was concealed in the vehicle. *Hooks*, 780 F.2d at 1531. However, when this evidence is considered in totality with the other evidence presented to the jury, there was sufficient evidence to sustain Escamilla's conviction based on constructive possession.

At trial, Escamilla attempted to portray himself as an innocent passenger. He reiterates this argument on appeal. The evidence presented to the jury, however, belies this argument.

The jury heard evidence that Escamilla was unemployed but was found with more than $1,800 on his person. He also had a small quantity of cocaine in his sock. The jury was informed that the wholesale and retail values of the methamphetamine were approximately $150,000 and $900,000, respectively. These values could reasonably lead a jury to infer constructive possession because it is unlikely the true owner of the vehicle would leave such a valuable commodity unattended or in the possession of another individual, especially considering that the odor of the substance clearly revealed its location and that the

vehicle was being used to travel across the country. When asked about his travel plans, Escamilla claimed he was traveling to Indiana to attend a family reunion yet he was unable to specify his destination.

Despite Escamilla's testimony that Sanchez picked him up in the vehicle and arranged for its use, the jury heard testimony that Escamilla could identify the owner of the vehicle by his first name, identified the owner as a friend and readily provided the officer with the vehicle's registration. A jury could reasonably infer from this evidence that Escamilla was involved in the arrangements to secure the use of the vehicle. Additionally, two officers testified that there was a distinct odor inside the vehicle.[1]  From this, a jury could have reasonably inferred that Escamilla, whether or not familiar with the scent of methamphetamine, was aware of something amiss.

The most damaging evidence against Escamilla, however, concerned his possession of pay-owe sheets, slips of paper documenting drug deals, which were discovered in his day planner and wallet. For instance, Government's Exhibit 2A,

_____

[1] Escamilla contends the arresting officer's testimony concerning the odor was not credible because (1) the methamphetamine bore no odor at the time of trial, (2) another officer at the scene could not smell the methamphetamine until he was "down next" to the compartment holding the drugs, and (3) the drug-sniffing dog at the scene did not immediately alert. Witness credibility is in the sole province of the jury and we will not reconsider it on appeal. *Avery*, 295 F.3d at 1177. We do note, however, that the drug evidence presented at trial was one-quarter of the total seized and was stored in a heat-sealed plastic container, thereby accounting for the lack of odor at trial.

retrieved from Escamilla's day planner, reflects handwritten notations of names and numbers, e.g., "Jess paid 1 owe 4," "James paid 4," "+20 lb more"[2] and "20½ out 25½ in." Government's Exhibit 2G, a piece of paper identical to those in Escamilla's day planner, also contains handwritten notations of names and numbers such as "Jesses paid 4,000," "Gave Doro 25,000" and "Henry paid 4,750 wanted one more roll." The government also presented a piece of paper from Escamilla's wallet, Exhibit 13A. This too has similar notations, in particular, "Jesses -4 got 800.00 Jesses."[3] Based on the presence of these sheets in Escamilla's planner and wallet, a reasonable jury could infer that he had knowledge and control over the drugs and was an active participant in their transportation.

Testimony also established the presence of dog food and a gas can in the trunk of the vehicle. A jury could have reasonably inferred that the dog food served as a potential distraction in the event the vehicle was subject to a drug-dog sniff. The gas can's presence could evidence knowledge that the gas tank had

---

[2] Testimony presented to the jury established that the drugs seized in this case weighed approximately 20 pounds.

[3] Escamilla contends there was no evidence establishing he authored these documents or even that he knew of their existence. We disagree. The arresting officer testified that the day planner from which these documents were taken was discovered in the passenger compartment, where Escamilla was riding, and contained a ticket stub issued in his name. The wallet from which these documents were found contained Escamilla's social security card.

been altered to a diminished capacity to accommodate the secret compartment where the drugs were found. A video tape played to the jury demonstrated the sophistication of this hidden compartment. As part of the process required to open the compartment, it was necessary to run a magnet over a certain point inside the console. This magnet was found inside the console. From the ready availability of an object as uncommon as a magnet, in effect a key to the compartment, a reasonable jury could infer Escamilla had knowledge of the hidden compartment and therefore, the drugs. Admittedly, the dog food, gas can and magnet could have been present without Escamilla's knowledge. However, when these facts are considered in totality with the other evidence presented at trial, a reasonable jury could conclude that Escamilla was more than an innocent passenger.

There was sufficient evidence to support the jury's finding that Escamilla constructively possessed the methamphetamine found in the vehicle and, accordingly, its verdict.[4]

b. *Chain of Custody*

The methamphetamine seized in this case was initially stored in the office

----

[4] Escamilla relies on our decisions in *United States v. Jones*, 49 F.3d 628 (10th Cir. 1995) and *United States v. Hishaw*, 235 F.3d 565 (10th Cir. 2000), in which we found the evidence insufficient to support constructive possession. Those cases are clearly distinguishable and, like all cases claiming insufficiency of the evidence, turn on their specific facts.

of the arresting officer rather than the sheriff department's evidence room. The

drugs remained in his office for five days until they were retrieved by the Drug

Enforcement Agency (DEA). The arresting officer testified that four other

individuals, including the janitorial staff, had access to his office at that time.

While in the possession of the arresting officer, the drugs were used to make a

training video. Prior to shipment for laboratory testing, the DEA placed the drugs

in heat sealed envelopes. The chemist who analyzed the drugs testified he

received the drugs in one box. Based on these facts, Escamilla challenges the

district court's decision to admit the methamphetamine.[5]

We review evidentiary rulings for an abuse of discretion. *United States v.

Cardenas*, 864 F.2d 1528, 1530 (10th Cir.), *cert. denied*, 491 U.S. 909 (1989).

Where, as here, the evidence sought to be admitted "is not readily identifiable and

is susceptible to alteration by tampering or contamination," the proponent must

demonstrate a chain of custody sufficient to show that the evidence is in

substantially the same condition as when the offense occurred. *Id.* at 1531. The

government did so in this case, producing testimony from all individuals in the

chain of custody, each of whom testified to no material changes in the condition

---

[5] Escamilla contends the officers handling the drugs did not wear plastic gloves, preventing a fingerprint analysis and a direct link between Escamilla and the drugs. This argument pertains to his insufficiency of the evidence claim, which has been rejected.

of the drugs from when he last handled them, other than changes resulting from laboratory testing. Escamilla's arguments that the drugs may have been tampered with while in the office of the arresting officer or during shipment to the laboratory amount to mere speculation. The district court did not abuse its discretion in admitting the methamphetamine.

Moreover, once evidence has been admitted, any "deficiencies in the chain of custody go to the weight of the evidence, not its admissibility." *Id.* The jury, which heard the chain of custody evidence and the arguments pertaining to it, assessed credibility, assigned weight to the evidence and reached its conclusion. We will not second guess its decision.

*c. Interference With Attorney-Client Relationship*

Escamilla contends Robert Booker, Sanchez's lawyer, compromised his relationship with his court-appointed counsel, Bel-Ami De Montreux, thereby violating his Sixth Amendment right to counsel and entitling him to a new trial. This argument was presented to the district court in a motion to set aside the verdict or for a new trial, which was denied after an evidentiary hearing, at which Escamilla, Sanchez and their respective counsel testified.

The alleged interference occurred as a result of discussions between Sanchez and Escamilla, while both were housed in the county jail. Sanchez informed Escamilla that Booker could "get both of [them] off" as along as

Escamilla refused to work with Montreux. These discussions led Escamilla to call Booker. There is no dispute that Escamilla and Booker had a conversation but each has a decidedly different version of the specifics of the conversation. Booker testified that he told Escamilla he could not talk with Escamilla about the case because Escamilla was represented by other counsel. Escamilla stated Booker told him that Booker could "beat the case" if Escamilla refused to let Montreux work on it.[6] Escamilla also testified that because of his reliance on Booker, he did not cooperate with Montreux.

On appeal, Escamilla contends that although Montreux was physically present in court as his attorney, Booker was his *de facto* attorney and accordingly, jointly represented Escamilla and Sanchez. He claims this joint representation resulted in a conflict of interest, constituting a per se violation of his Sixth Amendment right to counsel, requiring no showing of prejudice. But he also contends prejudice was demonstrated by his refusal to assist Montreux in his defense. Escamilla did not inform Montreux of two potential witnesses and did not discuss the possibility of a plea agreement with him.

We review a denial of a motion for new trial for an abuse of discretion. *United States v. Gallegos*, 108 F.3d 1272, 1279 (10th Cir. 1997) (citation

---

[6] On cross-examination, however, Escamilla admitted Booker never personally told him not to assist Montreux but rather, that this message was relayed to him through Sanchez.

omitted).  In cases alleging ineffective assistance of counsel based on a conflict of interest, we review de novo whether an actual conflict existed but accept the factual findings of the district court unless clearly erroneous.[7]  *Id.* (citations omitted).

The Sixth Amendment right to counsel guarantees a criminal defendant, *inter alia*, the right to effective assistance of counsel, which includes a right to conflict-free representation.  *Id.* at 1280 (citations omitted).  An ineffective assistance of counsel claim requires a showing that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  However, in some Sixth Amendment contexts no showing of prejudice is required.  *Id.* at 692.  Such contexts include (1) a complete denial of the assistance of counsel, (2) government interference with counsel's performance,[8] and (3) the existence of an actual conflict of interest between the defendant and counsel.  *Id.*; *see also Cuyler*

---

[7] We do not generally review claims of ineffective assistance of counsel on direct appeal.  *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  Nevertheless, our review is appropriate here because the record has been sufficiently developed and a determination of the ineffective assistance of counsel claim is necessary for our review of the district court's denial of the motion to set aside the verdict or for a new trial.  *Id.*

[8] The parties rely upon *United States v. Lopez*, 4 F.3d 1455 (9th Cir. 1993); *United States  v. Owen*, 580 F.2d 365 (9th Cir. 1978) and *State of Utah v. Ford*, 793 P.2d 397 (Utah App. 1990).  In each of these cases, the alleged interference or misconduct was committed by the government or its agents, which is not the case here.

*v. Sullivan*, 446 U.S. 335, 349-50 (1980) (in cases where an attorney "actively represent[s] conflicting interests" and that conflict "actually affected the adequacy of [the] representation," prejudice is presumed).

No conflict of interest based on joint representation occurred in this case because an attorney-client relationship did not exist between Escamilla and Booker. In denying Escamilla's motion to set aside the verdict or for a new trial, the district court found "[d]espite Escamilla's apparent confidence in Mr. Booker's efforts, . . . for all relevant purposes Mr. Montreux represented [Escamilla]." This finding is supported by the record. Montreux actively represented Escamilla, filing pretrial motions on his behalf, investigating the government's case against him, and representing him at the trial and evidentiary hearing. Escamilla admitted he knew Montreux was his attorney and he had not retained Booker. He was also aware Booker represented Sanchez. Because no attorney-client relationship existed between Escamilla and Booker, there was no conflict of interest and no Sixth Amendment violation.

Despite the absence of joint representation, a question lingers: whether Escamilla's choice to eschew his formal attorney-client relationship in favor of an ad hoc alliance with Sanchez, and possibly Booker, presents a Sixth Amendment problem.

Escamilla was provided an attorney who, as the district court found,

"competently and vigorously" represented him during both the pre-trial and trial proceedings. Escamilla admitted he was satisfied with his counsel's performance and the same counsel continues to represent him in this appeal. Any deficiency in Montreux's performance resulted directly from Escamilla's decision not to cooperate and cannot support a Sixth Amendment violation. *C.f. United States v. King*, 936 F.2d 477 (10th Cir. 1991) (rejecting ineffective assistance of counsel claim based on attorney's failure to contact alleged material witnesses where defendant failed to supply the attorney with the names of these witnesses).

Not only does Escamilla fail to show a deficient performance of legal significance by his attorney, he also cannot satisfy the prejudice prong of *Strickland*. The two potential witnesses Escamilla failed to disclose to his counsel would have, allegedly, testified they saw Escamilla being picked up by Sanchez. Escamilla contends those witnesses were necessary to refute the arresting officer's testimony, that he believed Escamilla, not Sanchez, borrowed the vehicle from Guarcia because Escamilla provided the vehicle registration from the glove compartment. But the testimony would have been merely cumulative. Escamilla's unchallenged and undisputed testimony established that he was picked up by Sanchez. Moreover, the arresting officer admitted he merely assumed Escamilla borrowed the car and acknowledged that Escamilla, as the passenger, was closest to the glove compartment.

-14-

Escamilla's claimed loss of a potential plea bargain is speculative, at best. Nothing on record suggests a plea agreement would have been extended or that he would have accepted an offer. Such musings fail the prejudice test.

We emphasize that the underlying purpose of the Sixth Amendment's right to counsel is to protect the fundamental right to a fair trial. *Id.* at 684. But its promise is opportunity, not result. Individual folly is beyond its reach. The district court did not abuse its discretion in denying the motion to set aside the verdict or for a new trial.

## III. Conclusion

The evidence was sufficient to support the jury's verdict, the methamphetamine was properly admitted and no Sixth Amendment violation occurred. The Judgment and Sentence are **AFFIRMED**.

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge