**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAMIAN INOCENTE GONZALEZ,

      Defendant-Appellant.

No. 99-3392
(District of Kansas)
(D.C. No. 98-CR-40079-02-SAC)

**ORDER AND JUDGMENT***

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Damien Gonzalez was convicted, following a jury trial, of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a).[1]  This case is before the court on counsel's motion to withdraw and accompanying *Anders* brief.  *See Anders v. California*, 386 U.S. 738 (1967).  In his appellate filings, counsel indicates that Gonzalez insists on challenging the sufficiency of the evidence to support his convictions. Accordingly, counsel has submitted a brief "referring to anything in the record that might arguably support" a sufficiency of the evidence challenge.  *Id.* at 744. Nevertheless, counsel has indicated that upon a "conscientious examination" of the record, he has determined that the appeal is "wholly frivolous."  *Id.*  Upon *de novo* review of the parties' briefs and contentions[2] and the entire record on appeal, this court agrees with counsel's assessment and concludes that the record demonstrates no non-frivolous appellate issues.  Accordingly, exercising

[1]In his *pro se* supplemental brief, Gonzalez cryptically asserts that the jury actually acquitted him of the § 846 conspiracy charge.  A review of the appellate record, with particular reference to the jury's special verdict form, the courtroom minute sheet, and the district court's judgment of conviction, demonstrates that this assertion is completely frivolous.

[2]Gonzalez was provided with a copy of counsel's *Anders* brief and motion to withdraw and filed a supplemental *pro se* brief in response thereto.  *See Anders v. California*, 386 U.S. 738, 744 (1967) ("A copy of counsel's [*Anders*] brief should be furnished the indigent [defendant] and time allowed him to raise any points he chooses . . . .").  This court has fully considered Gonzalez's *pro se* brief in resolving this appeal.

jurisdiction pursuant to 28 U.S.C. § 1291, this court **grants** counsel's motion to withdraw and **affirms** the district court's judgment of conviction.

## II. BACKGROUND

On August 26, 1998, while patrolling the Kansas Turnpike, Kansas Highway Patrol Trooper Jim Brockman noticed and began to follow a maroon Ford Crown Victoria.[3] Trooper Brockman observed that the Crown Victoria was traveling in tandem with a bronze-colored Mazda.[4] As he continued to follow the Crown Victoria,[5] Trooper Brockman noticed that the Mazda slowed considerably. When the Mazda eventually exited the Turnpike, Brockman continued following the Crown Victoria and notified a fellow trooper of the developments and requested that he provide assistance by monitoring the Mazda.

Shortly thereafter, Trooper Brockman initiated a traffic stop of the Crown Victoria. When Brockman asked for proof of insurance, Diaz handed him insurance documents showing that Gonzalez was the insured. After issuing Diaz

---

[3]The driver of the Crown Victoria was later identified as Lazaro Diaz.

[4]The Crown Victoria and Mazda were traveling in close proximity to each other and both bore Texas license plates.

[5]Brockman took special notice of the Crown Victoria because he had received information that a vehicle matching the Crown Victoria's make and license plate would be carrying drugs through the area.

a warning,[6] Trooper Brockman requested consent to search the vehicle. Diaz gave written consent and Brockman searched the vehicle. Approximately 30 pounds of cocaine were found in a hidden compartment between the rear seat and trunk of the Crown Victoria. Trooper Brockman also seized a bill of sale and a Texas liability insurance card from the glove box of the vehicle. The bill of sale reflected that Gonzalez had purchased the vehicle and the insurance card reflected that Gonzalez had insured the vehicle.

In the meantime, Kansas Highway Patrol Trooper Thomas Walters stopped the Mazda. There were four individuals in the Mazda: the driver Gonzalez and passengers Elisa Kindelan, Eduardo Moruarte-Jimenez, and Blanca Hernandez. Gonzalez presented Trooper Walters with a Texas drivers' license in the name of Damian Inocente Gonzalez. Based upon information received regarding Trooper Brockman's stop of the Crown Victoria, the individuals in the Mazda were arrested. A search warrant was obtained and the vehicle searched. During that search, officers found a vehicle title for the Crown Victoria in Kindelan's purse.

---

[6]Trooper Brockman testified as follows regarding the reason for the traffic stop:

> I could see the driver of the Crown Victoria was checking his rear view mirrors. He was obviously nervous because I was behind him. He drove completely off the roadway, straddling the white line that designates between the driving portion and the shoulder of the roadway. This occurred several times. I continued following the vehicle until just prior to the stop where he made an illegal lane change by failure to signal the lane change.

Gonzalez was indicted on cocaine possession and conspiracy charges and the case eventually went to trial.[7] At trial, Hernandez testified for the government.[8] She testified that all of the individuals in the Mazda, with the exception of Kindelan, knew that there was cocaine in the Crown Victoria and that they had followed Diaz, who drove the Crown Victoria, all the way from Houston. She further testified that seven kilograms of the cocaine came from Gonzalez and that the night before they left Houston, Gonzalez woke her up to help him "scrape" the cocaine. She watched him scrape off approximately eight ounces of cocaine and repackage it. Hernandez testified that Gonzalez, as well as co-defendants Diaz and Moruarte-Jimenez, were present and participated in placing the drugs in the Crown Victoria. She also testified that Gonzalez placed the certificate of title to the Crown Victoria in Kindelan's purse because Hernandez refused to let him put it in the glove compartment of her vehicle.

Kansas City, Missouri Police Officer Terry Carter testified at trial that the amount of cocaine seized from the Crown Victoria, 29.4 pounds or 13.34 kilograms, was clearly intended for distribution rather than personal use. He

___

[7]Hernandez, Moruarte-Jimenez, and Diaz were also indicted on cocaine possession and conspiracy counts. All three eventually pleaded guilty to lesser charges. Kindelan, the fourth occupant of the Mazda, was not charged in the indictment.

[8]At the time of her testimony, Hernandez had entered into a plea agreement with the government, entered a guilty plea to a lesser charge, and was awaiting sentencing.

further testified that one kilogram of cocaine has a street value of approximately $25,000 to $30,000.

Lucilo Alverado testified that in 1997 she sold insurance to Gonzalez covering the Crown Victoria. When he purchased the insurance, Gonzalez provided Alverado with a bill of sale for the vehicle and his driver's license. Alverado testified that Gonzalez paid for the insurance either with cash or by money order and that Gonzalez made the most recent premium payment on August 24, 1998.

Bassam Farhat testified that he owned the car dealership that sold Gonzalez the 1992 Crown Victoria. Mr. Farhat identified the bill of sale to Gonzalez as well as the copy of the driver's license provided by Gonzalez at the time he purchased the Crown Victoria.

Gonzalez testified at trial and admitted that he purchased the Crown Victoria and purchased insurance. He claimed, however, that he did so at the request of his employer, Kindelan, that Kindelan paid him for the vehicle and insurance, and that he had never had possession of the vehicle. Gonzalez further testified that he drove to Kansas City at the request of Hernandez. According to Gonzalez, Hernandez advised him that her husband was on probation for a DUI conviction and needed a driver. Gonzalez testified his understanding was that the

group was traveling to Kansas City to change Hernandez's husband's area of probation.

## III. ANALYSIS

This court reviews *de novo* the question whether the government introduced sufficient evidence to sustain Gonzalez's convictions. *See United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999). In advancing a sufficiency-of-the-evidence challenge, Gonzalez is "faced with a high hurdle." *See United States v. Voss*, 82 F.3d 1521, 1524 (10th Cir. 1996). This court must examine the evidence adduced at trial in the light most favorable to the government, determining only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Hanzlicek*, 187 F.3d at 1239. In that regard, this court must consider both direct and circumstantial evidence, as well as any reasonable inferences to be drawn from that evidence, in resolving a sufficiency-of-the-evidence challenge. *See United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993). Furthermore, in resolving such a challenge, this court does not weigh conflicting evidence or consider the credibility of witnesses. *See United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997). It is the jury's prerogative as fact finder to resolve conflicting testimony, weigh the

evidence, and draw inferences from the facts presented. *See United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1996).

In order to sustain Gonzalez's conspiracy conviction under § 846, the government must have presented sufficient evidence at trial to prove the following four elements: (1) there was an agreement between Gonzalez and at least one other person to violate federal drug laws; (2) Gonzalez had knowledge of the essential objectives of the conspiracy; (3) Gonzalez knowingly and voluntarily involved himself in the conspiracy; and (4) there was interdependence among the alleged conspirators. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1530 (10th Cir. 1996). "An agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *See United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994). With regard to Gonzalez's conviction for possession with intent to distribute, the government had to prove that Gonzalez: (1) possessed a controlled substance; (2) knew he possessed a controlled substance; and (3) intended to distribute the controlled substance. *See United States v. Mains*, 33 F.3d 1222, 1228 (10th Cir. 1994). Possession of a controlled substance can be either actual or constructive. *See United States v. Lazcano-Villalobos*, 175 F.3d 838 843 (10th Cir. 1999).

The evidence set forth above, particularly the testimony of Hernandez, is more than sufficient for a reasonable juror to find Gonzalez guilty on both the conspiracy and possession-with-intent-to-distribute counts. Without completely recapitulating the testimony and evidence set out above, this court notes that Gonzalez purchased the "load vehicle" with the hidden compartment, the Crown Victoria, approximately nine months before his arrest and maintained insurance on the vehicle during that time period. Gonzalez owned seven kilograms of the cocaine found in the hidden compartment and was responsible for combining and repackaging his drugs with the drugs of other conspirators to make up the entire twelve-kilogram shipment. Gonzalez, along with his co-conspirators, participated in the hiding of the drugs in the hidden compartment on the night before the party left Houston to travel to Kansas City. Gonzalez drove the "escort vehicle," the Mazda, following very closely behind the Crown Victoria for the entire trip. Finally, Officer Carter testified that the large quantity of cocaine was inconsistent with personal use and was clearly intended for distribution.

In his supplemental *pro se* brief, Gonzalez contends that this court should disregard the testimony of Hernandez because: (1) her testimony was pursuant to a plea agreement wherein she was offered lenient treatment; and (2) her testimony may have been influenced by correspondence she received while in prison from co-defendant Diaz. Considered in the context of this case, both contentions are

patently frivolous. The plea agreement reached between Hernandez and the government obligated Hernandez to testify truthfully at Gonzalez's trial in exchange for the government's promise not to prosecute Hernandez on other charges. This agreement was fully disclosed to the defense and explored in depth at trial. Accordingly, Gonzalez's claims regarding the testimony fail under this court's decisions in *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) (*en banc*) and *United States v. Del Mercado*, No. 99-3247, 2000 WL 1224538 (10th Cir. Aug. 26, 2000). As to the letters Hernandez received in prison from Diaz, we simply note that the letters were disclosed to the defense and were used by the defense at trial in an effort to impeach the testimony of Hernandez. Despite these efforts at impeachment, the jury obviously chose to credit Hernandez's testimony. As noted above, it is the jury's function to determine credibility and resolve conflicting testimony; this court will not second guess the jury's credibility determinations on appeal.

## IV. CONCLUSION

For those reasons set forth above, this court concludes that Gonzalez's sufficiency-of-the-evidence challenges are wholly frivolous. Furthermore, after a thorough review of the record, this court concludes that this case does not raise any other non-frivolous issues. *See Anders*, 386 U.S. at 744 (noting court of

appeals has duty, in light of counsel's *Anders* brief, to examine "all the proceedings[] to determine whether the case is wholly frivolous"). Accordingly, this court **GRANTS** counsel's motion to withdraw and **AFFIRMS** the district court's judgment of conviction.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge